[No. 10988–0–I.  Division One.  May 29, 1984.]

UNITED STATES FIRE INSURANCE COMPANY, *Appellant,*
v. ROBERTS AND SCHAEFER COMPANY,
*Respondent.*

*Reed, McClure, Moceri & Thonn, P.S.,* and *William R. Hickman,* for appellant.

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Stuart G. Oles,* and *Robert J. Burke,* for respondent.

CORBETT, J.—Appellant, United States Fire Insurance Company (U.S. Fire), appeals the judgment entered against it following a bench trial. We affirm.

In 1970, respondent Roberts and Schaefer Company (R & S) contracted with Washington Irrigation and Development Co. (WIDCO) to design and construct a coal preparation facility in Centralia. The plant included a coal storage silo, which collapsed after the plant began operation. Collapse of the silo resulted in loss of the coal it contained, damage to automobiles and property in the vicinity, and closing of the plant for a month to permit removal of debris.

At the time of collapse, R & S had the following insurance:

1. A primary liability policy written by Employers of Wausau (EW) with $100,000 limits.
2. An excess liability policy written by U.S. Fire with limits of $10 million.
3. Three builder's risk policies with aggregate limits of $5 million.

R & S timely notified all of its insurance carriers of the loss. WIDCO filed an action against R & S for breach of contract, breach of warranty, and negligence. R & S counterclaimed for unpaid amounts owed under the construction contract. This action was ultimately settled, and an agreed judgment was entered against R & S. Each of the insurers, except U.S. Fire, contributed to the settlement. In this subsequent action between R & S and U.S. Fire, the trial court found coverage under the U.S. Fire policy for the

following portions of the agreed judgment that had been entered in the WIDCO action:

| | |
|---|---:|
| Damage to employees' automobiles, cleanup, and loss of coal in the silo | $139,451 |
| WIDCO's loss of revenue while the plant was inoperative | 354,192 |
| Total | 493,643 |
| Less EW payment of policy limit | −100,000 |
| Total owed by U.S. Fire | $393,643[1] |

U.S. Fire assigns error to the finding of coverage. The U.S. Fire policy is an excess liability policy which indemnified R & S for ultimate net loss in excess of the retained limit for, among other things, "property damage liability," defined as:

> Damages because of injury to or destruction of tangible property including consequential loss resulting therefrom . . .

The policy did not apply to claims:

> for the loss of use of any such defective product or products or part or parts thereof.

U.S. Fire contends that the $354,192 in lost revenue resulted from loss of use of the plant, and that loss of use of the plant was caused by loss of use of a defective part thereof—the coal silo. Thus, U.S. Fire argues that the trial court erred in finding coverage in the face of an exclusion for loss of use of a defective product or part thereof. U.S. Fire relies upon *American States Ins. Co. v. Hurd Bros., Inc.,* 8 Wn. App. 867, 871, 509 P.2d 1015 (1973), in which a similar exclusion was construed to deny coverage. In *American States,* an air ventilation system in a potato storage shed did not operate properly. As a result, the potatoes had to be removed 1 month early to prevent spoilage. The insured sought recovery under the policy for lost storage charges caused by early removal of the potatoes. Such loss was held not to be within the general cover-

---

[1] The judgment entered was in the amount of $395,343. The discrepancy is not explained in the record.

age of the policy, which included only injury to or destruction of tangible property. The court nonetheless went on to construe the exclusionary clause.

It is evident that the judgments for loss of storage charges resulted from the loss of use of the storage sheds caused by the loss of use of the defective ventilating systems. Damages for loss of use of a defective product or loss of use of property resulting therefrom are excluded from coverage.

*American States Ins. Co. v. Hurd Bros., Inc., supra* at 871. The facts of the instant case are distinguishable in that intangible losses such as lost revenue are not necessarily outside of the general coverage of the policy, which specifically includes consequential damages. The more significant difference, however, is the fact that the lost revenue in the instant case was not directly caused by the loss of *use* of the defective product, as it was in *American States*.

R & S relies upon *Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 72 Wn.2d 682, 688, 434 P.2d 725 (1967). In *Rowland,* a building contractor sold a completed house, which was later damaged by fire. The fire was caused by the wooden floor joists having been placed too close to the fireplace. The court held that the exclusion for injury to or destruction of products "out of which the accident arises" did not apply to the entire house, but only to the component parts out of which the accident arose. The court upheld coverage for actual physical damage to the rest of the house; the court did not reach the question of recovery for intangible losses directly or indirectly flowing from loss of use of the defective product. *Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co., supra* at 688.

As a general rule, exclusionary clauses are strictly construed against the insurer. *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 26 Wn. App. 376, 380, 613 P.2d 800 (1980), *aff'd,* 95 Wn.2d 909, 631 P.2d 947 (1981). The insurance policy must be interpreted as a whole. *Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 166, 588 P.2d 208 (1978); *Herrmann v. Grange Ins. Ass'n,* 33 Wn. App.

734, 738, 657 P.2d 346 (1983). Also, where possible, all parts of the insurance policy must be harmonized and given effect. *McDonald Indus., Inc. v. Rollins Leasing Corp., supra* at 380. In harmonizing the general coverage clause and the exclusionary clause in the policy before us, the issue becomes whether the lost revenue flowed from or was an element of the damages resulting from the loss of use of the defective product.

Courts in other jurisdictions have applied similar exclusions in general liability policies to bar coverage when the defective component is the direct cause of loss of use of the entire entity. *See, e.g., Hogan v. Midland Nat'l Ins. Co.,* 3 Cal. 3d 553, 476 P.2d 825, 829–30, 91 Cal. Rptr. 153 (1970) (overhead costs during period in which saw, upon which operation of business depended, was inoperable); *Employers Cas. Co. v. Brown–McKee, Inc.,* 430 S.W.2d 21, 27 (Tex. Civ. App. 1968) (lost storage revenue due to loss of use of defective silo). These decisions are in accord with the approach taken in *American States Ins. Co. v. Hurd Bros., Inc., supra* at 871, where the loss of use of the defective component (ventilating system) was the direct cause of loss of use of the entire entity (storage shed), and lost revenue proximately flowed therefrom.

U.S. Fire strenuously maintains that loss of use of the defective silo caused loss of use of the plant, which in turn caused the lost revenue for the period of inoperability. We disagree. Where a defective component has a detrimental effect on an entity *unrelated* to loss of function of the component itself, coverage is not barred by an exclusion relating to loss of use of a defective product. *See Western Cas. & Sur. Co. v. Polar Panel Co.,* 457 F.2d 957, 960–61 (8th Cir. 1972) (collecting cases). In the instant case, the lost revenue was not caused by loss of *use* of the defective silo, since the plant could and did function without the silo. Rather, the physical collapse of the silo, as opposed to a functional breakdown, resulted in the plant grounds being covered by rubble. During cleanup, which took a month, the plant was closed, and the lost revenue was incurred.

Thus, the lost revenue was caused by the physical effect of a nonessential component collapsing upon the plant grounds, not by the lack of a functioning silo. The trial court did not err in finding the lost revenue to be covered under the policy.

U.S. Fire also contends that the claim for cleanup of debris was covered by the installation floater in R & S's builder's risk policies. It asserts that coverage under these policies was specifically extended to cover debris removal expenses. U.S. Fire additionally argues that the builder's risk insurers contributed less than their total policy limits and that as excess carrier, U.S. Fire had no liability under its "other insurance" clause. U.S. Fire raised the "other insurance" clause for the first time after trial. There is nothing in the record from which this court can determine whether the "installation floater" of the builder's risk policy was still applicable to the completed silo at the time of collapse, and the trial court made no findings on these issues. Since U.S. Fire did not raise these issues during the course of trial, we will not consider them upon appeal. *See Stratton v. U.S. Bulk Carriers, Inc.*, 3 Wn. App. 790, 795–96, 478 P.2d 253 (1970). In any event, the "other insurance" clause would only be applicable if the builder's risk policies were in effect, and we cannot determine this from the record before us.

We therefore determine U.S. Fire's liability for debris removal on the basis of the general coverage provision of its policy. The cost of debris removal is covered as "damages because of injury to or destruction of tangible property . . . caused by an occurrence."

U.S. Fire also assigns error to the trial court's finding that R & S was covered by the U.S. Fire policy for damage to WIDCO employees' automobiles and for loss of coal in the silo. U.S. Fire makes no argument as to coverage with respect to these specific items, which were listed with the costs of cleanup. Assignment of error without argument or citation of authority will not be considered on appeal.

*Mellor v. Chamberlin,* 34 Wn. App. 378, 383, 661 P.2d 996 (1983).

The trial court concluded that U.S. Fire was estopped from raising defenses based on the exclusionary clauses in its policies, but went on to uphold coverage regardless of the exclusions, which it found to be inapplicable. Because we find no error in the trial court's findings and conclusions concerning coverage, we do not address its ruling on estoppel. Likewise, any error in the trial court's denial of U.S. Fire's motion to conform the pleadings to the proof to encompass evidence of the exclusionary clauses is harmless, since the trial court correctly held the clauses to be inapplicable.

■ In its cross appeal, R & S seeks to recover for its attorney's fees incurred in defense of the WIDCO action. The general rule, followed by the trial court in this case, is that the excess insurer's duty to defend does not arise until the primary insurer has exhausted its obligation.

> Most courts have held that an excess insurer that has a duty to defend is not obligated to provide a defense if the primary insurer is so obligated. Since the primary insurer's duty, once activated, encompasses the claims that have been made against the insured regardless of whether they are in excess of the primary insurer's policy limits, the excess insurer's duty to defend does not come into existence.

(Footnotes omitted.) A. Windt, *Insurance Claims and Disputes* § 4.11 (1982). R & S tendered the defense to EW, its primary insurer, which provided counsel who participated in the trial. It was not until a settlement was reached after conclusion of the trial that EW paid its limits toward the settlement. Although the limit of the EW policy was $100,000, the attorney provided by EW had a duty to diligently and in good faith provide competent services without regard to the limits of the policy. *See Hamilton v. State Farm Mut. Auto. Ins. Co.,* 9 Wn. App. 180, 183, 511 P.2d 1020 (1973), *aff'd,* 83 Wn.2d 787, 523 P.2d 193 (1974). There is no evidence in the record that R & S challenged

690

the adequacy of the defense provided by its primary carrier. While private counsel retained by R & S acted as lead counsel, there were substantial counterclaims, cross claims and third party claims not covered by insurance that would require the services of independent counsel. Without evidence demonstrating failure of counsel provided by EW to provide a defense, and segregating defense costs relating to items within U.S. Fire's coverage, the trial court did not err in dismissing the counterclaim for attorney's fees.

Affirmed.

DURHAM, C.J., and JOHNSEN, J. Pro Tem., concur.