[No. 50452–1.   En Banc.   August 23, 1984.]

JAN WENDLE, *Appellant,* v. GLORIA FARROW, *Respondent.*

*Huppin, Ewing, Anderson & Hergert, P.S.,* by *Ronald G. Morrison,* for appellant.

*Layman, Loft, Smythe & Arpin,* by *Gregory J. Arpin,* for respondent.

BRACHTENBACH, J.—This case is an appeal from a summary judgment dismissing an action for contribution. The trial court held that the action was barred by the parental immunity doctrine and by RCW 4.22.060(2). We affirm, but

on a different ground; this action is barred by the doctrine of equitable estoppel.

On July 27, 1981, Gloria Farrow and her 2½-year-old son, Michael, went to the residence of Mr. and Mrs. Jan Wendle to pick berries, at the invitation of the Wendles. After picking berries for a few minutes, Gloria noticed that her son had disappeared, and started looking for him. Michael was found, unconscious, in the Wendles' swimming pool. Efforts to revive him failed; he died.

The Wendles' outdoor, above-ground swimming pool could be reached only by going into and through their house. Apparently, Michael gained access to the house through an unlocked door, went through the house, and found the pool.

The Wendles carried homeowner's insurance with United Pacific Insurance Company (United Pacific). Immediately after the drowning, United Pacific contacted the Farrows and offered to pay funeral expenses and a $1,000 lump sum. About 1 week later, United Pacific called the Farrows again. Claiming that Gloria Farrow was partly responsible for Michael's death, United Pacific explained that it would pay the Farrows $1,000, but would not pay funeral expenses. The Farrows, upset, referred the matter to their attorney.

In subsequent negotiations with the Farrows' attorney, United Pacific contended that Michael's death was due in large part to Gloria's negligence in failing to properly supervise him. The Farrows vigorously resisted this contention throughout the negotiations. On October 29, 1981, the Farrows, acting for themselves and the estate of Michael Farrow, settled their claim against the Wendles for $50,000, the limit of United Pacific's coverage. The Farrows executed a document entitled "release," in which they released and forever discharged from liability the Wendles, their family members, United Pacific, and all other persons.

On November 16, 1981, United Pacific wrote a letter to Gloria Farrow, asserting that her negligence was a major factor in the drowning and informing her that it would be requesting contribution from her as a joint tortfeasor.

These assertions were repeated in a second letter dated December 21, 1981. Once again, the Farrows referred the matter to their attorney.

On December 16, 1982, United Pacific, being subrogated to its insured's position through Jan Wendle, sued Gloria for contribution. Gloria responded with a motion for summary judgment of dismissal. Her motion was based on two arguments: first, that the parental immunity doctrine shielded her from liability for Michael's death, and therefore barred United Pacific's contribution action; and second, that under RCW 4.22.060(2), the release she and her husband had signed on October 29, 1981, discharged her from any liability for contribution. The trial court agreed with both arguments, and granted the summary judgment of dismissal. We accepted certification from the Court of Appeals.

We may sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof. *Gross v. Lynnwood,* 90 Wn.2d 395, 401, 583 P.2d 1197, 96 A.L.R.3d 187 (1978). We need not decide whether the parental immunity doctrine or RCW 4.22.060(2) precludes this contribution action. Our review of the uncontroverted evidence in the record persuades us that the doctrine of equitable estoppel provides the most appropriate ground for affirming the dismissal of this contribution action.

In order to establish equitable estoppel, it must be shown that the party to be estopped made an admission, statement or act which was inconsistent with his later claim; that the other party relied thereon; and that the other party would suffer injury if the party to be estopped were allowed to contradict or repudiate his earlier admission, statement or act. *See Johnson v. Central Vly. Sch. Dist. 356,* 97 Wn.2d 419, 432–33, 645 P.2d 1088 (1982). Thus, in order for the doctrine of equitable estoppel to bar this contribution action, it must be shown that United Pacific made an admission, statement or act which was inconsistent with the later action for contribution; that the

Farrows relied thereon; and finally, that the Farrows would be injured if United Pacific was allowed to pursue the contribution action in contradiction of its earlier admission, statement or act.

Since the trial court dismissed the contribution action on an order of summary judgment, we must engage in the same inquiry as the trial court. A summary judgment may not be granted unless there is no genuine issue as to any material fact, considering all facts submitted and all reasonable inferences from the facts in the light most favorable to United Pacific. *See Zehring v. Bellevue,* 99 Wn.2d 488, 493, 663 P.2d 823 (1983).

The record includes the deposition of Jerome Leveque, claims manager for United Pacific. Leveque acknowledged that Gloria Farrow's alleged negligence had been discussed in the settlement negotiations between United Pacific and the Farrows. When the Farrows continued to reject United Pacific's argument that Gloria was negligent, Leveque explained, "we then fell back to see, how can we still get this settled and protect our policy holder, and yet develop what we feel is a legitimate recovery of funds paid." United Pacific began to consider the possibility of a contribution action against Gloria shortly before the Farrows settled their claim. According to Leveque, United Pacific was not certain prior to settlement that a contribution action was available, but drafted the settlement agreement in such a way as to preserve any rights to contribution it might have. Leveque admitted that, to his knowledge, the Farrows' attorney was never told prior to settlement that United Pacific intended to pursue a contribution action against Gloria. In his words, "we told him nothing."

The record also contains the affidavit of Gail Holden, the attorney who represented the Farrows throughout the settlement negotiations. Holden stated that Gloria Farrow's alleged negligence had been a key point in the settlement negotiations. He further stated that United Pacific had not told him prior to settlement that it intended to pursue contribution against Gloria. Finally, Holden asserted that it

had been his understanding that the $50,000 settlement had compromised the issue of Gloria's negligence.

Finally, the record contains the affidavit of James Farrow, Gloria's husband. James stated that he and Gloria accepted the $50,000 settlement offer in the belief that they were thereby resolving all claims arising out of Michael's death. James also noted that United Pacific did not inform him or Gloria that it intended to sue Gloria for contribution. Had the Farrows been so informed, they would not have accepted United Pacific's settlement offer or signed the release.

In view of these facts, we believe United Pacific is estopped from bringing this contribution action. Following negotiations in which United Pacific consistently argued that the Farrows' recovery should be reduced because of Gloria Farrow's contributory negligence, United Pacific offered the Farrows $50,000 in settlement of their claim against the Wendles. Under these circumstances, the settlement offer operated as a *statement* that United Pacific had taken Gloria's alleged negligence into account, and would pay the Farrows a total of $50,000 if they would settle their claim. The Farrows, *relying* on this statement, and unaware that United Pacific was considering bringing a contribution claim against Gloria, accepted the $50,000. If United Pacific were now permitted to sue Gloria for contribution, thereby effectively *repudiating* its earlier statement that it would pay a total of $50,000 to the Farrows, the Farrows would suffer *injury*. Therefore all the elements of equitable estoppel are present. Furthermore, since the facts upon which we rely are undisputed on the record, there are no genuine issues of material fact which would prevent us from affirming the trial court's grant of summary judgment. *See Zehring v. Bellevue, supra.*

We direct United Pacific's attention to RCW 48.01.030, which provides:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and

equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

Affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.