[No. 7402-8-II. Division Two. April 15, 1986.]

STEVEN JAMES DOBOSH, *Individually and as Guardian ad Litem*, ET AL, *Respondents*, v. ROCKY MOUNTAIN FIRE AND CASUALTY CO., *Appellant*, SAFECO INSURANCE COMPANY OF AMERICA, *Respondent*.

*Harold B. Field* and *Murray, Dunham & Murray,* for appellant.

*Brian M. Baker* and *Baker, Paroutaud, Mano & McKer-richer,* for respondent Dobosh.

*Ralph G. Swanson* and *Swanson, Parr, Cordes, Young-love, Peeples & Wyckoff, P.S.,* for respondent Safeco Insurance.

REED, J.—Rocky Mountain Fire and Casualty Co. appeals a summary judgment in favor of the respondents, Steven Dobosh and Safeco Insurance Company of America. The trial court held that Rocky Mountain's automobile insurance policy provides underinsured motorist coverage (UIM) to guest passengers in Dobosh's vehicle. We reverse.

On May 9, 1981, a 2–car accident occurred involving an automobile driven by Steven Dobosh. Dobosh and the four passengers in his vehicle were injured. One passenger was Dobosh's daughter, Tiffany; the other three were "guest passengers", unrelated to Dobosh. The driver of the other car was underinsured.

Safeco insured two of Dobosh's guest passengers and its policy included underinsured motorist coverage. Rocky Mountain insured Dobosh and its policy also included UIM coverage but the company denied such coverage to Dobosh's guest passengers, contending that its policy unambiguously excludes guest passengers from UIM coverage.

Dobosh and the passengers in his automobile brought an action for declaratory judgment against Rocky Mountain and Safeco. The plaintiffs asked the trial court to rule that Rocky Mountain's policy included guest passengers in its UIM provision and to rule on the primary and secondary responsibilities of the respective insurance companies. Safeco cross–claimed against Rocky Mountain, alleging that Rocky Mountain's UIM coverage was primary and covered all the passengers in Dobosh's vehicle. Dobosh and Safeco moved successfully for summary judgment.

Rocky Mountain's underinsured motorist endorsement provides coverage for "the insured", defined to mean "each person covered as an insured under the bodily injury liability protection of the policy to which this endorsement is attached." Reference to the definition section of the policy is necessary to determine who is covered under the liability section of the policy (there is no "bodily injury liability" section as such). The "Insured" is there defined as "the person(s) or group(s) protected under the *policy coverage.*" "Covered person" is defined as "anyone using *your covered auto* with *your* permission." (Italics boldfaced in original.) Rocky Mountain argued before the trial court and argues before us now that "using" means more than merely occupying a vehicle, that it refers to exercising control over the vehicle, and that therefore a mere passenger is not "using" the insured vehicle for purposes of UIM coverage.

The trial court rejected the argument that UIM coverage that excludes guest passengers is contrary to public policy, but it held that Rocky Mountain's UIM coverage includes guest passengers, because they would be "using" the insured automobile.

The first issue presented, the extent of Rocky Mountain's UIM coverage, centers on the meaning of the word "using" as it appears in the context of the policy. Insurance policies are to be construed as contracts, and interpretation is a matter of law. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). In construing the language of an insurance contract, the entire

contract is to be construed together for the purpose of giving force and effect to each clause. *Neer v. Fireman's Fund Am. Life Ins. Co.,* 103 Wn.2d 316, 320, 692 P.2d 830 (1985). A court cannot modify clear and unambiguous language of an insurance contract under the theory of construing it. *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985).

In our view, when the policy is considered as a whole, the term "using" under the liability section is not ambiguous and it does not encompass merely occupying a vehicle as a passenger. Although the term "using" is, by itself, broad and imprecise, it is much less so when viewed in the context of the insurance contract in question. Because a passenger who is merely occupying a covered automobile will not be subject to liability for the *act* of being a passenger, that passenger would not be "using" the automobile for the purposes of liability coverage. A contrary conclusion would be unreasonable. An insurance policy should not be given a "strained or forced construction which would lead to an . . . absurd conclusion, or render the policy nonsensical . . ." *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434–35, 545 P.2d 1193 (1976).

Because it is reasonable to conclude that a passenger would not, under the terms of the policy, be subject to liability simply because he or she is a passenger, it is reasonable to conclude that a passenger is not covered by the UIM endorsement. As stated in the policy, one is insured under the UIM endorsement if one is insured under the liability section of the policy. UIM coverage is coextensive with liability coverage.

The conclusion that a passenger is not "using" the vehicle as that term is used in the policy is reinforced by the distinctions elsewhere in the policy between "using" and "occupying." In the Personal Injury Protection (PIP) endorsement, the distinction is twice made between "occupying the insured automobile as a guest passenger" and "using the insured automobile with the permission of the named insured." These distinctions indicate clearly that a

guest passenger is not "using" the covered automobile. Although consideration of the language in the PIP endorsement may entail a "complicated reading" of the policy as Dobosh alleges, we are not concerned here with an exclusion from coverage already extended, which would require more conspicuous placement. The distinctions here, contained within the four corners of the policy, are merely evidence of the meaning attributed to certain terms by the insurer. It is appropriate for us to consider such distinctions because our interpretation of the contract requires harmonizing and giving effect to all its parts. *See Neer,* 103 Wn.2d at 320; *United States Fire Ins. Co. v. Roberts & Schaefer Co.,* 37 Wn. App. 683, 683 P.2d 600 (1984).

The only reasonable interpretation of the term "using", in the context of the policy as a whole, is one that excludes being a passenger. A contrary interpretation would render the liability section nonsensical because one does not incur liability to others by the act of being a passenger. Guest passengers are, consequently, not within Rocky Mountain's UIM coverage.

Where policy language is unambiguous, the court will give effect to that language unless it is contrary to public policy. *Progressive Cas. Ins. Co. v. Jester,* 102 Wn.2d 78, 80, 683 P.2d 180 (1984); *Dairyland Ins. Co. v. Uhls,* 41 Wn. App. 49, 52, 702 P.2d 1214 (1985). The starting point for our consideration of public policy is the statute itself. RCW 48.22.030(2), the underinsured motorist statute, mandates UIM coverage "for the protection of persons insured thereunder". Where a policy's underinsured motorist endorsement does not provide protection to the extent mandated by the underinsured motorist statute, the offending portion is void as against public policy. *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985). The Rocky Mountain policy complies with the statutory mandate by extending UIM coverage to those insured under the liability section of the policy.[1] Because the Legis-

---

[1]There can be no suggestion that the company has limited its definition of

lature has seen fit to limit this kind of insurance to those insured under the policy, we will not replace its assessment of public policy with our own.[2] Further, we know of no public policy that dictates that an insurer extend coverage beyond that mandated by statute. As stated in *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 75, 549 P.2d 9 (1976), "[the uninsured motorist statute, RCW 48.22.030] does not mandate any particular scope for the definition of who is an insured in a particular automobile insurance policy."

Accordingly, we find no reason to engage in the kind of policy analysis suggested by Dobosh and Safeco. In those insurance cases where Washington courts have engaged in extensive public policy analysis, such judicial scrutiny has been triggered by *exclusions* from policy coverage. *See, e.g., Progressive Cas. Ins. Co. v. Jester, supra; Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982); *Wada v. Nationwide Mut. Ins. Co.,* 42 Wn. App. 433, 711 P.2d 384 (1985). Such is not the case here. Additionally, we note that most insurance companies provide policies in which the UIM coverage extends to guest passengers. Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819, 827 (1980). Persons who wish to purchase such coverage may do so.

Because the policy issued to Dobosh by Rocky Mountain unambiguously does not provide UIM coverage to guest passengers and because such is not violative of public policy, we reverse and remand for entry of summary judgment in favor of Rocky Mountain.

WORSWICK, C.J., concurs.

---

insured for the purpose of restricting UIM coverage. Rocky Mountain's definition of insured is not unreasonable and, moreover, is contained in the original policy which preceded the creation of UIM coverage.

[2] The Legislature can, if it so desires in future amendments to the statute, make it clear that passengers are to be covered under UIM provisions. *See Barkwill v. Englen,* 57 Wn.2d 545, 358 P.2d 317 (1961). *See also Sayan v. United Servs. Auto. Ass'n,* 43 Wn. App. 148, 716 P.2d 845 (1986).

PETRICH, J. (dissenting)—The majority concludes that the only reasonable interpretation of the term "using" in this policy is one that excludes being a guest passenger. I disagree and dissent. The term "use" is construed to include all proper uses of the vehicle. *Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 26, 593 P.2d 156 (1979); 6B J. Appleman, *Insurance* § 4316 (1979). It is not synonymous with, or limited to, "operation" of the vehicle. 7 *Blashfield on Automobiles* § 315.7 (3d ed. F. Lewis 1966); 12 G. Couch, *Insurance* § 45.42 (2d rev. ed. 1981). A number of other jurisdictions have concluded that a person riding in a vehicle is "using" the vehicle. *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 475 A.2d 454, 461 (Ct. App. 1984); *State Farm Mut. Auto. Ins. Co. v. Francis,* 669 S.W.2d 424, 427 (Tex. Ct. App. 1984); *Motor Club Fire & Cas. Co. v. New Jersey Mfrs. Ins. Co.,* 73 N.J. 425, 375 A.2d 639, 645, *cert. denied,* 434 U.S. 923, 54 L. Ed. 2d 281, 98 S. Ct. 402 (1977); *Commonwealth v. Giannino,* 371 Mass. 700, 358 N.E.2d 1008, 1010 (1977); *Home Indem. Co. v. Lively,* 353 F. Supp. 1191, 1193 (W.D. Okla. 1972); *Orrill v. Garrett,* 100 Ill. App. 2d 194, 241 N.E.2d 1, 3 (1968). *But see Auto–Owners Ins. Co. v. Jones,* 397 So. 2d 317, 320 (Fla. Dist. Ct. App. 1981).

The question of when a person is "using" a vehicle and is protected by an uninsured motorist endorsement was addressed in *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 585 P.2d 157 (1978). In that case, a delivery truck driver was returning to his truck after asking for directions when he was struck by an uninsured motorist. The court concluded that the truck driver was "using" the truck at the time he was struck, based on the following four criteria:

(1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be

engaged in a transaction essential to the use of the vehicle at the time.

(Citations omitted.) *Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. at 334.

Dobosh's guest passengers clearly satisfy criteria 2 and 3, as they were in the vehicle at the time of the collision. Since the use of the vehicle asserted by the passengers is to be transported from one place to another, riding in the car is an essential transaction under criterion 4. The only question is whether there is a causal connection between the passengers' injuries and their use of the vehicle. No causal connection has been found where the vehicle is only the situs of the injury, such as occupants injured by the discharge of a firearm inside the vehicle. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d at 26–27. However, where the operation of the vehicle has some connection to the injury, there is a causal connection. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d at 27–28. Here, the vehicle was more than the mere situs of the injuries, it was the cause of the injuries. I conclude that all four of the *Rau* criteria are met and that the guest passengers were "using" the vehicle.

The majority states that "[b]ecause it is reasonable to conclude that a passenger would not, under the terms of the policy, be subject to liability simply because he or she is a passenger, it is reasonable to conclude that a passenger is not covered by the UIM endorsement." This suggests that a distinction can be drawn between passengers who subject themselves to liability and those who do not. I believe that this is an ill–advised suggestion, based on the following hypothetical. A car, containing a driver and three guest passengers, veers into a common left–turn lane after one of the passengers jerks the steering wheel out of the driver's hands. At the same moment, an oncoming, uninsured car negligently enters the turn lane and collides with the first car. The passenger who grabbed the steering wheel is "subject to liability" and, under the suggestion of the majority, would be covered by the UIM endorsement, but the other

passengers, who did *not* contribute to the collision, would not be covered. Such a result would not be consistent with the policy of providing broad protection against financially irresponsible motorists. *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972).

I believe that the majority's conclusion that the term "using" excludes guest passengers and my conclusion that the term includes them are both fair and reasonable interpretations. Therefore, I believe an ambiguity exists and that the term "using" should be construed in favor of coverage for the guest passengers. *GMAC v. Grange Ins. Ass'n,* 38 Wn. App. 6, 684 P.2d 744 (1984). I would affirm the trial court's entry of summary judgment in favor of Dobosh and Safeco.

Review denied by Supreme Court July 10, 1986.