SANDRA DYER, Plaintiff-Appellee, v. AMERICAN FAMILY INSURANCE COMPANY *et al.*, Defendants-Appellants.

Second District    No. 2—86—0661

Opinion filed August 25, 1987.

Kristine A. Karlin, Joseph F. Hickey, and Jay S. Judge, all of Judge & Knight, Ltd., of Park Ridge, for appellants.

Charles M. May, of Charles M. May, Ltd., of Waukegan, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Sandra Dyer, filed a complaint for declaratory judgment. In count II of that complaint, plaintiff sought a determination that she was entitled to uninsured motorist coverage under an insurance policy issued by defendant, Ansvar America Insurance Company, to plaintiff's father. Plaintiff sought payment of medical expenses incurred for injuries plaintiff sustained during a kidnapping and high speed chase in an automobile. Both plaintiff and defendant moved for summary judgment on count II. The trial court granted plaintiff's motion and denied defendant's. Defendant appeals.

On July 13, 1985, plaintiff and her friend, Bonnie Cowart, left work shortly after midnight and went to a disco lounge called Crackers. They remained there until closing and then proceeded to the Pit Stop in Zion, arriving at about 2 a.m. and remaining there for 20 to 30 minutes. At approximately 2:20 or 2:30 a.m., the two women sat conversing in Cowart's car in the parking lot of the Pit Stop when a man opened the driver's door and ordered the women at knife point to move over and sit with their heads bent forward between their knees. The abductor then drove out of the parking lot and headed towards Wisconsin at a high rate of speed, keeping the knife at the women's backs and threatening them with harm.

En route to Wisconsin, police vehicles began chasing the car and the abductor sought to elude them. The driver drove in a wild fashion as the women remained in their bent position with their heads below the dashboard. The chase headed back towards the Zion area. Near

the intersection of Route 173 and Kenosha Road, the vehicle left the main roadway knocking over three roadway signs on the east side of the road. The driver then traveled back across both lanes of Kenosha Road to the west shoulder before heading back across the road and down a hill, knocking loose some railroad ties which were used as a side embankment. The car appeared airborne and then crashed violently on its wheels. Plaintiff shrieked in pain after the car landed. The passenger door of the car flew open, and plaintiff's legs were hanging out as the abductor continued driving. Plaintiff could not bring her legs back in and complained that she could not move them.

The car was now traveling on the back service drive to the Rolling Hills Nursing Home. As the abductor proceeded around the building, he ran over a tree in the parkway, struck an employee's automobile, drove across the front lawn, down a ditch, and then back up onto Route 173, continuing eastbound. The car was pursued through a residential section of Zion until it came to a stop near a city park. The abductor exited the car and ran away.

During the entire incident, the abductor was driving Cowart's car without her permission as owner. On the date of the kidnapping plaintiff was residing with her father and qualified as an insured under the terms of his policy with defendant. It was undisputed that under part C of that policy plaintiff was a "covered person." The pertinent portion of part C states:

> "We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
> 1. Sustained by a covered person; and
> 2. Caused by an accident."

In her motion for summary judgment on count II of her complaint for declaratory judgment, plaintiff asserted that as a "covered person," she was entitled to recover under defendant's uninsured motorist coverage since her sustained injuries were caused by an accident which occurred while she was an occupant in an uninsured vehicle. In its motion for summary judgment, defendant maintained that plaintiff's injuries were not caused by accident, as required under the terms of its policy with plaintiff's father, but rather arose out of intentional and criminal conduct. Therefore, plaintiff was not entitled to coverage.

Subsequent to the filing of the parties' summary judgment motions, defendant moved the trial court to continue the hearing on the motions until a date following the trial of plaintiff's abductor for the offenses of aggravated kidnapping and aggravated battery. Defendant

argued that a conviction in that proceeding would constitute evidence that the abductor's conduct was criminal.

On June 25, 1986, the court entered its order denying defendant's motion for continuance and also its motion for summary judgment. The court granted summary judgment in plaintiff's favor on the issue of uninsured motorist coverage, finding that plaintiff was entitled to coverage for the incident occurring on July 13, 1985, under part C of the policy issued by defendant to plaintiff's father.

In this court defendant appeals, contending: (1) that uninsured motorist coverage, like liability coverage, prohibits coverage for intentional criminal conduct such as kidnapping; (2) that uninsured motorist coverage provides coverage for injuries caused by accident, and injuries caused by a kidnapping are not caused by accident; and (3) that the trial court erred in denying defendant's motion for a continuance on the parties' summary judgment motions to await the outcome of the criminal charges against plaintiff's kidnapper.

In reaching our determination in the instant action we have elected to treat defendant's first two issues as one main issue. We point out first that there is no dispute that plaintiff was a "covered person" under the policy issued by defendant to plaintiff's father and that the driver of the automobile at the time plaintiff sustained her injuries constituted an uninsured motorist under the policy.

■ We first consider defendant's contention that uninsured motorist coverage, like liability coverage, applies only to injuries caused by accident and not by intentional criminal conduct, such as kidnapping, and, therefore, plaintiff's injuries incurred during a kidnapping are not caused by accident.

The question of whether an uninsured motorist provision affords coverage for injuries sustained by an insured as the result of intentional, criminal conduct by an uninsured motorist has been previously reached by the Appellate Court for the Fifth District in *Country Cos. v. Bourbon* (1984), 122 Ill. App. 3d 1061, 462 N.E.2d 526, and by other jurisdictions. In *Bourbon* defendant was attending a picnic at a public park when an unassociated group of individuals began threatening and attacking members at the picnic. Because of the threats and attacks, the picnickers left the park in a pickup truck belonging to plaintiff insurance company's insured. The troublemakers pursued the truck by car and motorcycle. In an attempt to evade the pursuers, the pickup truck was traveling at high speed. Some bumping occurred between the pursuing car and the truck before the car abandoned the pursuit. The motorcyclist, however, pulled alongside the truck and attempted to hit the driver of the truck with a baseball bat, but missed,

smashing the outside rearview mirror instead. Then the motorcyclist pulled ahead of the truck, turned around, and drove directly at the truck. In an attempt to evade the motorcyclist, the truck left the highway, turning over three times, and injuring persons in the back of the truck, including defendant, who was thrown out of the truck.

The court first determined that both the car and motorcycle constituted uninsured vehicles under the provisions of the policy issued by plaintiff to the driver of the pickup truck. The court then decided that despite the fact that defendant's injuries resulted from intentional conduct by an uninsured motorist, the defendant was entitled to recover under the uninsured motorist provision. The court found that whether an injury is accidental and thus falls within the coverage of an uninsured motorist provision of an insurance policy depends upon the point from which the question is viewed. Viewed from the defendant's standpoint, his injuries were unforeseen, unintended, and unexpected and therefore "accidental" insofar as he was concerned. The court concluded that such a result which considers the injury from the victim's standpoint rather than centering upon a characterization of the uninsured motorist's actions as intentional or accidental "is more in keeping with the spirit and purpose of the uninsured motorist statute, which is, after all, designed to furnish protection to persons injured by uninsured or unknown motorists." (*Country Cos. v. Bourbon* (1984), 122 Ill. App. 3d 1061, 1067, 462 N.E.2d 526.) In our opinion, the court's decision in *Bourbon* is sound and in keeping with public policy.

Defendant, however, maintains that uninsured motorist coverage "was enacted as a complement to liability coverage" and that it was never intended to provide benefits where traditional liability insurance would not. In support of this proposition defendant relies upon *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 448 N.E.2d 591, wherein the court, in discussing the purpose of section 143a of the Illinois Insurance Code, which deals with uninsured or hit and run motor vehicle coverage (Ill. Rev. Stat. 1981, ch. 73, par. 755a), stated:

> "We have not found *** any indication that the legislature anticipated or intended that the liability of an insurer could be established by the intentional, criminal conduct, *such as that involved here.*" (Emphasis added.) (*Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 130-31, 448 N.E.2d 591.)

We do not believe, however, that this statement by the court supports defendant's position. In making the foregoing statement, the court was referring to the fact that although the intentional criminal conduct occurred while the assailant was in a car, a handgun rather than

the car was the instrumentality of the victim's injuries. In light of that circumstance, the court found that the insured should not be allowed to recover under an uninsured motorist's provision of an automobile insurance policy for injuries resulting from intentional, criminal conduct. We believe this finding is limited to the facts of that case.

■ It is true, as defendant asserts, that uninsured motorist coverage was intended to complement liability coverage to the extent that it would protect an insured against injuries caused by motorists who are uninsured and hit and run motorists. (*Barnes v. Powell* (1971), 49 Ill. 2d 449, 454, 275 N.E.2d 377.) Nevertheless, the two coverages serve different purposes and are to be viewed from different standpoints. This conclusion has been reached by other States which have considered the issue of recovery for injuries to an innocent victim caused by the intentional or criminal conduct of an uninsured motorist.

■■ ■ In holding that there was coverage of an insured who was injured as a result of the intentional act of an uninsured motorist, the court in *Leatherby Insurance Co. v. Willoughby* (Fla. App. 1975), 315 So. 2d 553, pointed out that the two types of policies, liability coverage and uninsured motorist coverage, are "conceptually dissimilar. Under uninsured motorist coverage the innocent injured party, not the intentional tortfeasor, is the 'insured'; and clearly, viewing the matter from the standpoint of the innocent victim, the injury is an 'accident.' " (315 So. 2d 553, 554.) The court went on to say that there were two other compelling reasons for its conclusion that there was coverage: (1) that the statute requiring uninsured motorist protection and automobile liability insurance contracts "was designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others," and (2) that "public policy considerations militating against self-indemnification for intentional wrongs, which perhaps may still be at least partially viable in the ordinary liability indemnification contract *** are obviously totally irrelevant under the uninsured motorist concept." 315 So. 2d 553, 555.

In *Celina Mutual Insurance Co. v. Saylor* (1973), 63 Ohio Op. 76, 301 N.E.2d 721, the court first pointed out that under uninsured motorist coverage an insured was not contracting for indemnification but for protection. The court then held:

"The intent in the mind of the insured at the time of the injury should determine whether acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twist-

ing of the obvious purpose of purchasing insurance coverage." 63 Ohio Op. 76, 77, 301 N.E.2d 721, 723.

■ As the court pointed out in *Redden v. Doe* (La. App. 1978), 357 So. 2d 632, "[t]he practical purpose of uninsured motorist coverage is to afford protection to an insured when he becomes the innocent victim of an uninsured motorist," and would therefore "be left without recourse to secure reparation. [Citation.] As such, this coverage acts as an accident policy for the victim ***." (357 So. 2d 632, 633.) Other cases holding in accord with *Leatherby, Celina,* and *Redden* are *Davis v. State Farm Mutual Automobile Insurance Co.* (1973), 264 Or. 547, 507 P.2d 9, *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Mitchell* (Ala. Civ. App. 1979), 373 So. 2d 1129, *American Protection Insurance Co. v. Parker* (1979), 150 Ga. App. 732, 258 S.E.2d 540, *Kish v. Central National Insurance Group* (1981), 67 Ohio St. 2d 41, 424 N.E.2d 288, *Nationwide Mutual Insurance Co. v. Roberts* (1964), 261 N.C. 285, 134 S.E.2d 654, *Hartford Accident & Indemnity Co. v. Wolbarst* (1948), 95 N.H. 40, 57 A.2d 151, *Wheeler v. O'Connell* (1937), 297 Mass. 549, 9 N.E.2d 544, and, very recently, *Keeler v. Farmers & Merchants Insurance Co.* (Mo. App. 1987), 724 S.W.2d 307. The only cases holding contrary are New York cases such as *McCarthy v. Motor Vehicle Accident Indemnification Corp.* (1962), 16 A.D.2d 35, 224 N.Y.S.2d 909.

The New York cases mainly involved actions by motorists against a State corporation established for the purpose of providing protection for persons injured in accidents caused by uninsured motorists. In *McCarthy* the court reasoned that the statutorily required uninsured motorist endorsement was only intended to afford an innocent victim the same protection as he would have had if the tortfeasor had been covered by a standard liability insurance policy. (16 A.D.2d 35, 41-42, 224 N.Y.S.2d 909, 916.) We believe this case is poorly decided and completely overlooked the consideration that uninsured motorist insurance was designed for the protection of insured victims.

■ We draw the parties' attention to the fact that the statute establishing uninsured motorist coverage (Ill. Rev. Stat. 1985, ch. 73, par. 755a) does not distinguish between negligent or intentional acts and, like the Missouri Court of Appeals stated in *Keeler v. Farmers & Merchants Insurance Co.* (Mo. App. 1987), 724 S.W.2d 307, 311, "we will not read into the statute something that is not there." Based on our interpretation of the statute and on the authority cited above, as well as the Fifth District's opinion in *Country Cos. v. Bourbon* (1984), 122 Ill. App. 3d 1061, 462 N.E.2d 526, we conclude that plaintiff's injuries, although resulting from the intentional criminal conduct of an

uninsured motorist, were unforeseen, unintended, and unexpected from the plaintiff's point of view and, therefore, constituted an "accident." Consequently, under the uninsured motorist provision of defendant's insurance policy, plaintiff, as an innocent victim of an uninsured motorist, was entitled to coverage for the injuries she sustained during her kidnapping.

Accordingly, we find the trial court's decision that plaintiff was entitled to uninsured motorist coverage was correct and that, therefore, the court did not err in granting plaintiff's motion for summary judgment on count II of the complaint for declaratory judgment. In light of this determination we find it unnecessary to discuss plaintiff's contention that defendant's payment under the medical payment provision of its policy established that plaintiff's injuries were caused by accident.

■ Defendant also contends that the trial court erred in denying defendant's motion to continue the hearing on the parties' motions for summary judgment pending the outcome of the criminal action against plaintiff's abductor. Defendant asserts that had the uninsured driver of Cowart's automobile been convicted of the charges stemming from the July 13, 1985, incident, defendant would be entitled to introduce evidence of that conviction as evidence that the driver's conduct constituted a crime rather than an accident, as alleged by plaintiff in her motion for summary judgment.

Although, as defendant points out, a trial court should not refuse a motion for continuance when the ends of justice require it (*Curtin v. Ogborn* (1979), 75 Ill. App. 3d 549, 553, 394 N.E.2d 593), the decision to grant or deny a motion for continuance lies within the sound discretion of the court and should not be overturned on appeal unless that discretion has been abused. (*Dempsey v. Sternik* (1986), 147 Ill. App. 3d 571, 579, 498 N.E.2d 310.) In the instant case we are in agreement with plaintiff that the trial court did not abuse its discretion in denying defendant's motion.

■ Plaintiff admitted in her amendment to the complaint for declaratory judgment and in her response to defendant's motion for summary judgment that she had been forced at knifepoint to ride with her head between her knees after her abductor forced his way into the Cowart automobile and to accompany him on a high speed chase during which her injuries occurred. As plaintiff had already admitted, prior to the hearing on the summary judgment motions, that she had been a victim of a kidnapping and that her injuries occurred when the abductor tried to elude the police, there was no necessity to continue the hearing and await the result of the individual's criminal

trial. Regardless of whether the abductor was found guilty or not guilty of the kidnapping offense, the result would not affect, as plaintiff points out, her admission. The court would still have had to consider that admission and plaintiff's account of the events leading to her injuries in determining whether her injuries were caused by an accident. We conclude that the trial court did not abuse its discretion in denying defendant's motion for a continuance.

Based on the reasons given above, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.