[No. 11386-4-II.   Division Two.   October 19, 1989.]

DANIEL ROLLER, *Appellant,* v. STONEWALL INSURANCE
COMPANY, *Respondent.*

*Robert A. Izzo,* for appellant.

*Pamela A. Okano, William R. Hickman,* and *Reed McClure Moceri Thonn & Moriarty,* for respondent.

PETRICH, J.—Daniel Roller appeals from a summary judgment denying him underinsured motorist (UIM) coverage for injuries he sustained due to the intentional acts of an uninsured driver. We reverse.

There are two issues on appeal: (1) whether a passenger is a user and thus an insured under the underinsured motorist coverage of the driver's liability policy at the time of the initial collision and later when the passenger left the car, immediately after impact, to examine the damage and to transcribe the license of the offending vehicle; and (2) whether coverage is precluded under the underinsured motorist endorsement of the insurance policy when the injuries sustained by the insured were due to the intentional acts of the uninsured motorist.

On December 17, 1985, Daniel Roller was a passenger in a motor vehicle driven by Ernest Flattum. Roller and Flattum were transporting Roller's daughter to the home of a babysitter in Tacoma. The home of the babysitter was next door to Roller's ex–wife, Dinell McKay.

Roller delivered his daughter to the babysitter and returned to Flattum's vehicle. At the same time, McKay was getting into her parked vehicle and was apparently

agitated at Roller. McKay drove her vehicle into Flattum's vehicle and the rear bumpers of the two vehicles became locked.

Roller got out of the car and went to tell the babysitter to call the police. In the meantime, McKay was attempting to free the bumpers by accelerating her vehicle. Roller stood to the left front of the vehicle and began to record the license number of McKay's vehicle. McKay freed her car, ran into Roller, and carried him on the car for a short distance. Roller sustained injuries as a result of the two collisions.

Neither McKay nor Roller had insurance policies. Flattum carried an insurance policy with Stonewall Insurance Company which provided for underinsured motorist coverage. Roller filed a claim under Flattum's insurance policy for the injuries he sustained during the first collision, while he was inside Flattum's vehicle, and for the injuries he sustained during the second collision, when he was recording McKay's license number. Stonewall Insurance Company denied coverage.

Roller filed an action seeking a declaration that he is entitled to coverage under Flattum's insurance policy. On cross motions for summary judgment the court declared that Roller was not entitled to coverage because he was not an insured under the policy and, furthermore, that the intentional acts of the uninsured driver, McKay, precluded coverage.

In reviewing the trial court's decision, this court must engage in the same inquiry as the trial court. *Wendle v. Farrow*, 102 Wn.2d 380, 383, 686 P.2d 480 (1984). A summary judgment may not be granted unless there is no genuine issue as to any material fact. *Wendle v. Farrow, supra.* Here, however, there is no dispute about the facts, and whether there is coverage depends on the language of the insurance policy. The interpretation of insurance policy language is a question of law. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 638, 762 P.2d 1141 (1988).

Stonewall Insurance Company argues that Roller is not an "insured" under the terms of the policy and is, therefore, not entitled to coverage for his injuries. The insurance policy contains two definitions of an "insured". Under the liability section, "insured" is defined, in part, as any person "using" your insured car. Under the UIM provision of the policy, "insured" is defined, in part, as any other person "occupying" your insured car. "Occupying" is defined in the definitions section as: in, on, getting into or out of.

■ Once it is determined that a person is insured under the liability section of the policy that person is entitled to be considered as an insured under the UIM endorsement of the policy. *Kowal v. Grange Ins. Ass'n,* 110 Wn.2d 239, 245, 751 P.2d 306 (1988). To the extent that a UIM provision narrows the definition of "insured" as defined in the liability section, it is invalid. *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 443, 563 P.2d 815 (1977); *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 329, 585 P.2d 157 (1978). Here, "using" is broader than "occupying". Therefore, the broader definition appearing in the liability section should be used in determining if Roller was "insured".

■ There term "using" is not defined in the insurance policy. A recent Washington Supreme Court case used four relevant criteria to determine whether a person is using a vehicle and, thus, whether the person is insured under a UIM endorsement. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d at 638. The four criteria are: (1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close physical proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d at 641.

■ Here, Roller was obviously using the vehicle when he was sitting in the passenger seat during the first collision.

Our Supreme Court has already held that the term "using" in an insurance policy includes passive use by a passenger. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d at 641.

We next examine whether the four criteria set out in *Sears v. Grange Ins. Ass'n, supra,* were met when Roller was hit during the second impact. First, Roller was transcribing the license number of the car that offended the insured vehicle at the time he was injured. Therefore, there was a causal connection between the injury and the use of the insured vehicle. Second, Roller was within 10 to 30 feet from the insured vehicle and was, therefore, in close physical proximity to the insured vehicle. Third, Roller was vehicle oriented rather than highway or sidewalk oriented. He had left the vehicle for a limited purpose and was not too far away from it. Fourth, Roller was engaged in a transaction essential to the use of the insured vehicle. It was essential that someone call the police and that the license plate number be reported to the police.

In *Rau v. Liberty Mut. Ins. Co., supra,* the court found that all the criteria were met even though the truck driver was away from his truck. The truck driver left his truck and crossed four lanes of traffic on foot to ask directions from another truck driver. An uninsured motorist hit the insured truck driver as he was returning to his truck, which was 20 feet away. The court in *Rau* held that the truck driver was "using" the insured truck at the time he was injured and was therefore covered by the uninsured motorist endorsement of the truck policy. *Rau,* 21 Wn. App. at 334–35.

Similarly, in the factual context of this case, we hold that the four criteria set out in *Sears* were met. Roller was "using" the insured vehicle and was thus an "insured" within the meaning of the policy during both collisions.

Stonewall Insurance Company argues that, nevertheless, there is no coverage because Roller's injuries resulted from intentional acts and not from an accident as required by the UIM provision of the policy. Roller concedes that

McKay's acts were intentional but argues that the acts were an accident from his point of view.

"Accident" has been defined as an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 215, 608 P.2d 254 (1980). "Accident" should be assessed from the standpoint of the claimant. *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 674, 689 P.2d 68 (1984).

In *Federated Am. Ins. Co. v. Strong, supra,* the insured's wife intentionally collided with two other automobiles causing damage to those vehicles as well as to the insured vehicle she was driving. The court denied coverage to the wife due to her intentional acts, but allowed coverage for the husband's claim. *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d at 669. The court held that since the insured husband did not intend the damage to the insured vehicle, the damage was accidental as to him and he was entitled to coverage. *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d at 674. Here, looking at the facts in the light most favorable to Roller, it is clear that the occurrence was an accident from his point of view and, thus, there is coverage.

Although *Federated* did not involve an uninsured motorist, our holding is consistent with decisions from other jurisdictions which involved insured motorists. In *Sciascia v. American Ins. Co.*, 183 N.J. Super. 352, 443 A.2d 1118 (1982), *aff'd*, 189 N.J. Super. 236, 459 A.2d 1198 (1983), the court held that, for the purposes of evaluating uninsured motorist coverage, the principle that an intentional wrong is not considered an accident has no application. *Sciascia*, 443 A.2d at 1120. The question of whether an incident or event is an accident must be considered from the viewpoint of the insured. *Sciascia v. American Ins. Co., supra.*

The court in *Dyer v. American Family Ins. Co.*, 159 Ill. App. 3d 766, 512 N.E.2d 1071, *appeal denied,* 117 Ill. 2d 542 (1987), held that the insured's daughter was entitled to coverage for the injuries she sustained during her kidnapping. Although the injuries of the insured's daughter

resulted from the intentional criminal conduct of an uninsured motorist, they were unforeseen, unintended, and unexpected from the plaintiff's point of view and, therefore, constituted an "accident". *Dyer,* 512 N.E.2d at 1075.

Other cases holding in accord with *Sciascia* and *Dyer* are *Keeler v. Farmers & Merchants Ins. Co.,* 724 S.W.2d 307 (Mo. Ct. App. 1987); *Halpin v. Hilderbrand,* 493 So. 2d 75 (Fla. Dist. Ct. App. 1986), *overruled on other grounds in Race v. Nationwide Mut. Fire Ins. Co.,* 542 So. 2d 347 (Fla. 1989); *Mileski v. Ortman,* 16 Ohio App. 3d 217, 475 N.E.2d 166 (1984) (coverage was not denied because the injury was intentionally inflicted but because the assault was not related to the use of the vehicle).

We find the rationale of *Sciascia v. American Ins. Co., supra,* convincing. In that case the court distinguished between liability coverage and UM coverage. The purpose of liability coverage is to indemnify the insured for damages which must be paid to others as a result of the insured's tortious conduct. On the other hand, the purpose of UM coverage is to compensate the insured for losses sustained by the insured. A person should not be indemnified for damages resulting from his own intentional wrongdoing. However, where the insured is an innocent victim, not the tortfeasor, "[t]here is no public policy which mandates or even suggests that, in UM coverage questions, an incident should be viewed through the eyes of the wrongdoer to determine if the insured was the victim of an 'accident.'" *Sciascia v. American Ins. Co.,* 183 N.J. Super. at 356.

Under the facts of this case, Roller was an "insured" under the terms of the policy and his injuries resulted from an "accident". Therefore, he was improperly denied UM coverage under Flattum's vehicle insurance policy.

Reversed and remanded with direction to the trial court to enter judgment declaring that Roller is entitled to coverage under the underinsured motorist section of Stonewall's policy.

ALEXANDER, C.J., concurs.

WORSWICK, J. (concurring in part, dissenting in part)—A factual issue probably exists as to whether the first impact, occurring while Roller was inside the car, was an accident. Under *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 762 P.2d 1141 (1988), Roller is entitled to UM/UIM benefits if it was. Therefore, I concur in the majority's result as to the first impact. I part company thereafter.

The majority effectively extends liability insurance coverage to Dinell McKay for an intentional tort committed against her ex–husband while he was standing in the street. The victim of this dubious largesse is Stonewall, who presumably thought it was only insuring Flattum's car and had never heard of either Roller or McKay. Stonewall's surprise at this turn of events is probably rivaled only by McKay's and Roller's.

To accomplish this, the majority melds three disparate principles from cases with equally disparate fact patterns: "passenger use" (*Sears v. Grange Ins. Ass'n, supra*); "Causal connection to vehicle" (*Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 585 P.2d 157 (1978)); and "accident" (*Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 689 P.2d 68 (1984)). *Sears* involved a passenger *within the automobile* who was injured in an ordinary collision. *Rau* concerned a truck driver, defined under the policy as an insured, who was injured by another vehicle after leaving his truck briefly to ask *driving directions. Federated* dealt with whether a husband's liability coverage continued to *protect him* where, without his knowledge or participation, his wife had committed an intentional tort *with the otherwise covered automobile.* I cannot conceive that the judges who decided those cases foresaw the majority's application of them here.

The principle that a passive guest–passenger within an automobile is "using" it for UM/UIM insurance purposes did not come without a considerable struggle. *See Dobosh v. Rocky Mt. Fire & Cas. Co.*, 43 Wn. App. 467, 717 P.2d 793, *review denied*, 106 Wn.2d 1011 (1986), *cited in Kowal v. Grange Ins. Ass'n*, 110 Wn.2d 239, 248, 751 P.2d 306

(1988), *overruled in Sears v. Grange Ins. Ass'n, supra.* The majority now makes an easy and unjustified leap from the passenger seat to the sidewalk. Further, leaving a vehicle briefly to ask driving directions, as in *Rau,* has some causal relationship to the *use* of the vehicle; the driver intended, after all, to use the directions in driving to his destination. Standing on the street to write down a license number has no such connection. Finally, although the *Federated American* court employed some legerdemain in turning an intentional tort into an accident, the result can be justified because the object of its protection was not only uninvolved but unaware of the occurrence. Here, Roller stood in front of his angry ex–wife's car and provocatively wrote down her license number. That she chose to retaliate by assaulting him with her car can hardly be described as accidental from his or anyone else's point of view.

Stonewall should be held to the terms of its contract with Flattum, but nothing more. I fear that the majority has overlooked that fundamental proposition in reaching the tortured result. Therefore, I dissent.

Review granted at 113 Wn.2d 1035 (1990).