COUNTRY COMPANIES, Plaintiff-Appellant, *v.* JORDAN SCOTT BOUR-BON, a Minor, by Muriel Bourbon, his Father and Next Friend, Defendant-Appellee.

Fifth District No. 82—586

Opinion filed February 24, 1984.

C. Patout Ducey, of Ducey, Feder & Ducey, Ltd., of Belleville, for appellant.

Cook, Shevlin, Keefe and Chatham, Ltd., of Belleville (Bruce N. Cook and Mary Mansfield Brauer, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff insurance company appeals from an order entered in two cases that were consolidated for hearing and disposition. The order directed plaintiff to enter into arbitration of a claim made by

defendant under the provisions of an uninsured motorist clause of a vehicle insurance policy issued to Robert Theis. The two cases consolidated were an action to compel arbitration commenced by Jordan Scott Bourbon, the injured claimant, herein to be referred to as defendant, and a suit by plaintiff insurance company seeking a declaratory judgment that no coverage was afforded by their policy for the incident and injury in question.

Plaintiff filed a motion for summary judgment in its declaratory judgment action, and it was denied. Plaintiff has evidenced some concern regarding the reviewability of an order denying a motion for summary judgment. However, since the evidence adduced in support of the summary judgment was also submitted in the declaratory judgment and petition to compel arbitration actions, we see no problem of reviewability in this case, especially in view of the fact that we affirm the order of the trial court. See *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352.

The facts are brief and undisputed. Defendant was a member of a group celebrating a birthday with a picnic at a public park. An unassociated group was also present in the park. This latter group provoked trouble and, in the end, threatened, and even attacked, members of the "picnic" group. Because of the threats and attacks, the "picnic" group left the park in haste in a pickup truck belonging to plaintiff's insured, Robert Theis. There were 11 persons in the truck. As they left the park they were cursed, threatened and then pursued by the troublemakers. Pursuit was by a car and a motorcycle. The group in the truck was terrorized by this time, and a coherent relation of events was difficult. Nevertheless, the parties agree that the pickup truck was traveling at high speed, at times up to 80 miles per hour, in an attempt to evade the pursuers. There was some bumping between the pursing car and the truck before the car broke off pursuit. However, the motorcyclist did not abandon pursuit. Armed with a baseball bat, he pulled alongside the truck and attempted to hit the driver of the truck. In one such attempt he missed the driver and hit and smashed the outside rearview mirror. All this occurred likewise at a high rate of speed. Immediately after the mirror-smashing incident, the motorcyclist pulled a distance ahead of the truck, turned around and drove directly at the truck in the truck's lane of travel. Mr. Theis stated that the headlight of the motorcycle completely blinded his vision. In making an attempt to evade the motorcycle, the pickup truck left the highway and turned over three times. Injured bodies were "scattered everywhere," and the motorcyclist rode away.

Defendant was in the back of the truck and was thrown out when the truck overturned, receiving the injuries that are the concern of these lawsuits.

Two issues are presented for review: (1) was the accident in which defendant was injured proximately caused by physical contact between the pickup truck and an uninsured vehicle, and (2) did the obviously intentional and criminal acts of the motorcyclist and the driver of the automobile constitute an "accident" within the meaning of the applicable provisions of the insurance policy?

It is plaintiff's contention that because of statements contained in the deposition of defendant, the trial court should have rendered summary judgment for plaintiff. That contention is pursued before this court. Defendant stated that the truck in which he was a passenger had skidded off the road because it was traveling at too great a speed and that there had been no physical contact between the truck and any other vehicle prior to the accident. Plaintiff also points to the statement of Robert Theis on deposition that he lost control of his truck.

Provision is made for protection for injuries caused by uninsured and unknown motorists by section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755a). The insurance policy issued by the plaintiff to Robert Theis contains an uninsured motorist section which is responsive to the requirements of the statute. Relevant portions of the policy are as follows:

"Section II—protection against bodily injury by uninsured vehicles.

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an Uninsured Vehicle because of bodily injury, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such Uninsured Vehicle ***.

'Uninsured Vehicle' means:

(1) a vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or bodily injury liability insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or,

(2) a vehicle where on, prior to or after the accident date the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits

specified in the policy because of the entry by a court of competent jurisdiction of an order of rehabilitation or liquidation by reason of insolvency on or after the accident date, or.

(3) a hit-and-run vehicle as hereinafter defined ***..

'Hit-and-Run Vehicle' means:

a vehicle which causes bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident ***.' "

In *Finch v. Central National Insurance Group* (1974), 59 Ill. 2d 123, 319 N.E.2d 468 and *Ferega v. State Farm Mutual Automobile Insurance Co.* (1974), 58 Ill. 2d 109, 317 N.E.2d 550, the supreme court held that a requirement of physical contact between the vehicle of the insured and that of the uninsured or unknown driver could be a valid provision of an insurance policy issued to comply with section 143a of the Illinois Insurance Code. The rule of those cases has been adhered to in all subsequent decisions, and we recognize them as controlling of the issues in this case.

While the plaintiff concedes that there was at one time physical contact between the vehicles involved, it argues that the ultimate accident was not the proximate cause of that physical contact. The plaintiff would have us limit our consideration of the coverage issue to the events that followed the smashing of the mirror by the motorcyclist. In particular, plaintiff asks that we make cardinal note of the fact that after the smashing of the mirror, the motorcyclist sped ahead of the truck, turned around, and drove directly at the truck with blinding lights. This last in a series of events caused the driver of the truck, with no physical contact between the two vehicles, to leave the highway and overturn. The plaintiff reasons that since the driver of the truck remained in full control following the mirror-smashing incident, he drove off the highway and overturned not because of any physical contact between the vehicles, and, therefore, under the *Finch* and *Ferega* cases, there is no liability to the defendant under the uninsured motorist section of its policy.

■ Plaintiff's interpretation of the accident and the other events that immediately preceded it is too narrow and constricted. Under the circumstances that pertain, we view the incident as but one episode rather than as a series of unrelated, separable incidents. From the time the truck left the park until it overturned alongside the highway, there was a direct line of causal events, occurring over a short span of space and time, that were directly involved, interre-

lated and ongoing without interruption, which culminated with the overturning of the truck. Integral parts of that event were the bumping between the truck and the car and the smashing of the mirror by the motorcyclist. These incidents furnished the physical contact necessary to defendant's recovery. We think that our determination that the accident in question arose out of the physical contact between the vehicles is within the letter, the spirit and the purpose of the uninsured motorist act and that plaintiff is properly held to arbitration as provided in its policy. We would emphasize that this is not a case of constructive contact or one in which phantom vehicles were involved, and, therefore, the result we reach does not contravene any public policy designed to dissuade spurious claims.

Since the actions of the motorcyclist and the driver of the car were intentional and criminal, can it be said that the physical contact we have described was not an "accident" as that term is used in section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755a) and the applicable policy provision that provides coverage for "accidents"?

This problem was recently addressed, but not directly decided, by the Illinois Appellate Court in *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 448 N.E.2d 591. In that case plaintiffs brought an action to recover damages resulting from the shooting death of their sister by the defendant. The victim was a passenger in one car and was shot by a driver of a second car who was alleged to be uninsured within the terms of the Illinois uninsured motorists statute. One of the defenses was that there was no "accident" within the purview of the statute. In considering the issue the court noted its inability to find any indication that the legislature anticipated or intended that the liability of an insurer be for intentional criminal conduct, such as that involved before the court. The court also noted that the plaintiffs had cited no Illinois authority. The court stated:

> "Those few cases which have allowed an insured to recover, under an uninsured motorist's provision of an auto insurance policy for intentional acts of the uninsured or unknown driver, involved injuries caused by the use of the auto as the instrumentality of the resultant injuries. (See Annot., 72 A.L.R.3d 1161, 1164-68 (1976).)" *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 131, 448 N.E.2d 591, 595.

In deciding the issue before it, the court in the *Curtis* case, citing *Finch v. Central National Insurance Group*, noted that Illinois courts have consistently held that some direct contact between the insurer's vehicle and that of the uninsured or unknown driver is a

condition precedent to establishing liability pursuant to section 143a of the Illinois Insurance Code. The *Curtis* court then found that there was no contact between vehicles; rather, the instrumentality of the victim's injury was a handgun. The court reasoned that inasmuch as the assailant could have carried out his intention from a bicycle or on foot, the fact that the assailant was in a car at the time was merely incidental. Accordingly, the court found that there was no uninsured motorist coverage available to the plaintiff.

We have examined the annotation in A.L.R.3d cited by the court in the *Curtis* case. We think it especially relevant to the case under consideration because we have found that there was direct contact between the vehicles involved and that the contact was both intentional and criminal.

The issue addressed in the A.L.R.3d annotation was:

> "Does such [an uninsured motorist] provision afford coverage for injuries sustained by the insured as the result of intentional conduct, such as an assault, by an uninsured motorist?" (Annot., 72 A.L.R.3d 1161, 1164 (1976).)

The annotation presents cases that have reached different conclusions on the issue. Cases in which coverage was denied were limited to New York and mostly involved actions by motorists against a State corporation established for the purpose of furnishing protection to persons injured in accidents caused by uninsured motorists. The reasoning in those cases, which need not be further cited here, was that an intentionally inflicted injury would not constitute an "accident" and therefore would not entitle the claimant to recover under the statutory scheme, which was designed to compensate for injuries received in accidents caused by uninsured motorists.

Other courts, notably those of Florida (*Leatherby Insurance Co. v. Willoughby* (Fla. App. 1975), 315 So. 2d 553, Ohio (*Celina Mutual Insurance Co. v. Saylor* (1973), 35 Ohio Miss. 81, 301 N.E.2d 721, and Oregon (*Davis v. State Farm Mutual Automobile Insurance Co.* (1973), 264 Or. 547, 507 P.2d 9) (interpreting Michigan law) have reached a contrary result. In summarizing the cases allowing recovery the annotation states:

> "In these cases, the courts reasoned, either expressly or by apparent implication, that the purpose of uninsured motorist coverage is to protect innocent victims who have been injured by financially irresponsible motorists, so that such coverage resembles an accident policy for the victim. Accordingly, the courts in these cases held that the question of whether or not an injury is accidental, and thus within the coverage of the

policy, must be determined from the victim's standpoint, and that from this point of view the injury, although inflicted intentionally, fell within the protection afforded by the policy." (Annot., 72 A.L.R.3d 1161, 1164 (1976).)

As the court in the Oregon case observed:

"Whether the occurrence is accidental depends entirely upon the point from which the question is viewed. If the occurrence is looked at from the point of view of the person who inflicts the harm or of his liability insurer, it is intentional. On the other hand, if it is looked at from the victim's standpoint, it is unforeseen, unintended, unexpected, and has every aspect of an accident as long as the occurrence was not provoked." *Davis v. State Farm Mutual Automobile Insurance Co.* (1973), 264 Or. 547, 550, 507 P.2d 9, 10.

Upon consideration we think the better rule to be that which considers the injury from the standpoint of the victim, rather than that which centers upon a characterization of the actions of an uninsured or unknown motorist as intentional or accidental. Such result is more in keeping with the spirit and purpose of the uninsured motorist statute, which is, after all, designed to furnish protection to persons injured by uninsured or unknown motorists. Thus, when viewing the incident we have related from the standpoint of the defendant, there can be no doubt that insofar as he was concerned it was indeed an accident, despite the fact that the injuries he received were the result of an intentional and criminal act. This result is not contrary to *Curtis v. Birch* because of the fact that that case was decided on the basis of "no physical contact."

For the foregoing reasons we affirm the order of the trial court which directed plaintiff to enter into arbitration with defendant.

Affirmed.

WELCH, P.J., and HARRISON, J., concur.