STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Plaintiff,

v.

Harry SKEENS and Vollena Maynard, Defendants.

Civ. A. No. 3:86–0888.

United States District Court, S.D. West Virginia, Huntington Division.

June 8, 1987.

Arden J. Curry, II and David K. Schwirian, Pauley, Curry, Sturgeon & Vanderford, Charleston, W.Va., for plaintiff.

Rudolph L. DiTrapano, DiTrapano & Jackson, Charleston, W.Va., and David Lockwood, Huntington, W.Va., for Vollena Maynard.

Harry Skeens, pro se.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the Plaintiff's motion for summary judgment, filed May 8, 1987. The Plaintiff seeks judgment on the entirety of its complaint which contains two counts. Count One seeks to declare that the Plaintiff insurance company does not have an obligation to defend or to indemnify Harry Skeens for liability resulting from an incident occurring May 26, 1984. Count Two of the complaint seeks declaratory judgment against Vollena Maynard, who was injured as the result of, among other things, contact with Harry Skeen's car on May 26, 1984.

Vollena Maynard and Harry Skeens were married for 14½ years prior to May, 1984. Maynard and Skeens were in the process of obtaining a divorce on May 26, 1984. That day, Skeens intended to drive to Ohio and attend the wedding of another person. While driving, Skeens became angry thinking about his own failed marriage. Prior to reaching his destination in Ohio, Skeens decided to return to Kenova, West Virginia, and proceeded to his friend David Jackson's house. Arriving at Jackson's house in Kenova, Skeens found Vollena Maynard, Skeens' and Maynard's daughter and Vollena Maynard's new boyfriend, David Clay. Skeens assaulted Clay and Clay escaped by taking the daughter's automobile. The police were called and upon arriving, the police attempted to calm Skeens and advised him to go home. Meanwhile, Maynard left Jackson's house on foot. Skeens left Jackson's residence in his truck and later saw Maynard walking on the side of the road.

Skeens ran the truck into Maynard, knocking her down, at a speed of about fifteen to twenty miles an hour. Skeens backed the truck off Maynard and at some point hit her again with the truck. Also during this incident, Skeens removed a shotgun from his truck and attempted to shoot Maynard, but the gun would not fire. Skeens then used the malfunctioning gun to beat Maynard.

Maynard did not die from her injuries and Skeens was prosecuted for malicious wounding. He was convicted and sentenced to two to ten years in a state penitentiary.

Skeens has defaulted. Skeens and his counsel appeared at deposition and conceded that Skeens' conduct as to Vollena Maynard was intentional. Maynard contends that there exist genuine issues of fact arising from pleadings she has filed in a state court action against Skeens and inconsistencies between Skeens' deposition and his testimony at his criminal trial. State Auto relies on the definition of liability coverage and an exclusion in contending that it has no duty to indemnify Harry Skeens for his conduct on May 26, 1984. Under the liability coverage portion of the policy at page 2, the policy states:

"We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted."

The policy further provides at page 2 under the heading of "Exclusions" as follows:

"We do not provide liability coverage for any person:

1. Who intentionally causes bodily injury or damage."

■ Vollena Maynard contends that State Auto has a duty to defend Skeens in this action as the allegation in the complaint do come within the provisions of the policy. Maynard alleges Skeens' conduct was reckless and grossly negligent. The Court questions Maynard's standing to demand that State Auto appear and defend on behalf of another person. The extent of Maynard's interest in Skeens' liability coverage would be limited to whether Skeens will be indemnified and not whether he is defended. Maynard relies on Skeens' testimony at his criminal trial wherein he claimed not to remember the events of May 26, 1984. His testimony was as follows:

"Q Were you drinking on that occasion [May 26, 1984]?

A Yes, I was. I had started about 7:00 o'clock that morning drinking.

Q What is the next thing you remember?

A Waking up here in the Wayne County Jail.

Q How did you feel on that occasion?

A It's a bad feeling.

Q Do you have any recollection of this whatsoever?

A No, I do not. My daughter even had to take me and show me where it happened at."

From this denial of knowledge, the Court perceives that there would be grounds for impeaching Skeens' testimony. However, Maynard does not offer under oath any other explanation of what Skeens did. From the jury's verdict in the criminal case, and the undisputed version of facts as they are related by the pleadings before this Court and deposition of Skeens leaves the Court with the conclusion that Skeens' failure to recall the set of facts at his criminal trial insignificant in creating a genuine issue of fact as to what occurred. In other words, Skeens does not at trial repudiate what he did; he simply said he could not remember. The Court at this juncture is left with only one version of the facts, that related above, which supports only the conclusion that what Skeens did was intentional.

The Court finding that it is an undisputable fact that what Skeens did was intentional and further that the policy issued by State Auto does not indemnify Skeens for liability arising from such intentional conduct, State Auto's motion for summary judgment as to Count One is granted and State Auto is not required to indemnify Skeens for liability arising from the events of May 26, 1984.

■ State Auto in Count Two seeks declaratory judgment against Vollena Maynard for two uninsured motorists policy provisions. The first uninsured provision is found in Skeens' policy. Maynard and Skeens, while legally married on May 26, 1984, were not living in the same household. In order to be a covered person as an unnamed family member, as Maynard was, the family member must be residing in the household of the named insured. This limitation is consistent with *W.Va.Code*, § 33–6–31(c). Since Maynard was not living in the same household as Skeens, she cannot claim uninsured motorists coverage under Skeens' policy. There remains, however, the question of whether Maynard can recover on her own policy under its mandatory uninsured motorists provision.

■ Uninsured motorists provisions are required by *W.Va.Code*, § 33–6–31 where "uninsured motor vehicle" is defined as

"A motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amount specified by [*W.Va.Code*, § 17D–4–2], as amended from time to time, or (ii) there is such insurance, but the insurance company writing the same denies coverage thereunder, or (iii) there is no certificate of self-insurance issued in accordance with the provisions of [*W.Va.Code*, 17D–6–2]."

That statute further provides at subsection (g) in pertinent part as follows:

"No such endorsement or provisions shall contain any provision requiring arbitration of any claim arising under any such endorsement or provision, nor may

anything be required of the insured except the establishment of legal liability."

State Auto relies on policy provisions which state that an uninsured vehicle does not include those vehicles owned or furnished or available for regular use by the insured, the insured's spouse or the family of either. State Auto relies further on language purported to require accidental injury before uninsured motor vehicle coverage would apply.

Terms of an insurance policy may not change the requirements of *W.Va.Code*, § 33–6–31. *Bell v. State Farm Mutual Auto Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974). If there is conflict between the provisions of the policy and the requirements of *W.Va.Code*, § 33–6–31, the provisions of the West Virginia Code apply. *Bell*, 207 S.E.2d at 151.

State Auto in its complaint offers three bases for denying Vollena Maynard uninsured motor vehicle coverage for injuries she suffered May 26, 1984. First, State Auto contends that since a policy did apply to Skeens' vehicle then it was not uninsured. This definition is plainly inconsistent with *W.Va.Code*, § 33–6–31(c), which provides at subsection (ii) that a vehicle as to which there is insurance but which the insurance company denies coverage is deemed uninsured. Since the statute governs and as State Auto denies coverage as to Skeens' vehicle, it is deemed uninsured as to Maynard.

Second, State Auto relies on language requiring accidental injury before uninsured motor vehicle coverage would apply. *W.Va.Code*, § 33–6–31(g), however, requires that the insured establish only legal liability. Since facts exist which tend to show that Vollena Maynard would be able to establish liability against Skeens, and that is all that is required by subsection (g), this is not a basis for denying uninsured motorist coverage.

Lastly, State Auto contends that uninsured motor vehicles do not include those owned or available for regular use of family members or spouses of the insured. Again, *W.Va.Code*, § 33–6–31(c) defines what an uninsured motor vehicle means.

The refined definition offered by State Auto is not among those definitions authorized by statute and accordingly, this attempted limitation is of no effect.

This Court concludes, therefore, that none of the legal reasoning offered by State Auto for avoiding uninsured motor vehicle coverage issued to Skeens as the named insured provides a basis for denying uninsured motor vehicle coverage to Maynard.

State Auto also contends that this policy was not in effect until two days after the accident in question. Maynard, however, has filed an affidavit wherein she states that she purchased the policy prior to the date of the accident and that it was her understanding that the policy would become effective immediately. As it appears that there exists a genuine issue of material fact as to the coverage of Maynard's own uninsured motor vehicle coverage, the Plaintiff's motion for summary judgment as to that policy is denied.

In summary, the Plaintiff's motion for summary judgment as to Count One is granted and as to Count Two is granted as to the Skeens policy but denied as to Maynard's own policy.