**Thomas B. WILSON, III, as personal representative of the Estate of Beverly Thompson, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. C1–89–1489.**

Court of Appeals of Minnesota.

Feb. 6, 1990.
Review Denied March 22, 1990.

Daniel C. McInerny, Christopher J. Pierson, Bennett, Ingvaldson & McInerny, P.A., Minneapolis, for appellant.

William M. Hart, Raymond Tahnk–Johnson, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Considered and decided by
KALITOWSKI, P.J., and HUSPENI
and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

Appellant Thomas B. Wilson, the personal representative of the estate of Beverly Thompson, brought an action for declaratory judgment seeking to recover uninsured motorist benefits under the insurance policy issued by respondent State Farm Mutual Automobile Insurance Company (State Farm). The trial court granted State Farm's motion for summary judgment and ruled appellant was not entitled to uninsured motorist benefits. We affirm.

## FACTS

On September 12, 1987, Beverly Thompson was intentionally killed when struck by a Cadillac driven by her husband, Robert Thompson. At the time of the collision Beverly was a pedestrian. Appellant stipulated for its summary judgment motion that Robert intended to inflict bodily harm on Beverly.

Beverly had purchased automobile insurance from State Farm and paid premiums on three cars, including the Cadillac, for $100,000 of liability coverage and $100,000 of uninsured motorist coverage on each car. Each policy named Robert and Beverly as insureds. The relevant State Farm provision reads as follows:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle.* The bodily injury must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*

(Emphasis in original.)

In a wrongful death action, the trustee of the heirs of Beverly commenced suit against Robert Thompson. The defense of this action was tendered to State Farm which refused it because Robert's intentional killing of Beverly precluded liability coverage. Appellant commenced this action asserting Beverly had a right to uninsured motorist benefits under the State Farm policy that insured the Cadillac. Both parties moved for summary judgment.

The trial court granted State Farm's motion. The court concluded: (1) the death of Beverly Thompson was not caused by accident; (2) her death did not arise out of the use of an uninsured motor vehicle for transportation purposes; and (3) the vehicle was not an uninsured motor vehicle pursuant to the policy's definition of uninsured motor vehicle. This appeal followed.

## ISSUES

1. Did the trial court err in concluding Beverly Thompson's bodily injuries were not caused by accident?

2. Did the trial court err in concluding the incident which caused Beverly Thompson's death did not arise out of the use of a motor vehicle for transportation purposes?

3. Did the trial court err in concluding the vehicle used to kill Beverly Thompson was not an uninsured motor vehicle?

## ANALYSIS

On appeal from summary judgment, the function of the appellate court is limited to determining whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). A question involving interpretation of the language of an insurance contract is one of law. *Associated Independent Dealers, Inc. v. Mutual Service Insurance Cos.*, 304 Minn. 179, 183, 229 N.W.2d 516, 519 (1975). Thus, on appeal we are to determine whether the trial court properly interpreted and applied the law to the facts of this case. *Id.* at 183–84, 229 N.W.2d at 519.

We start by noting appellant must show the trial court erred in its conclusion on each of the three issues raised on appeal. Failure to meet any one of the three necessary conditions of uninsured motorist coverage dictates affirming the trial court.

### I. *Accident*

The first issue is whether Beverly's injuries were caused by accident. The trial court held Beverly's death was not caused by accident since Robert stipulated his conduct was intentional. We agree.

This court's recent decision in *Petersen v. Croft*, 447 N.W.2d 903 (Minn.Ct.App. 1989), *pet. for rev. denied* (Minn. Jan. 12, 1990), disposes of this issue in favor of State Farm. In *Petersen*, three tortfeasors killed Randi Petersen in a drive-by shooting while she slept on her porch. Randi's husband sought uninsured motorist benefits. The trial court found the intentional killing of Randi was caused by accident. On appeal, this court reversed the trial court and held that when determining whether an occurrence is an accident for purposes of uninsured motorist coverage, the occurrence is to be viewed from the perspective of the tortfeasor. *Id.* at 905.

We reasoned that no situation could arise in which an occurrence would not be caused by accident if viewed from the victim's perspective. *Id.* Therefore, to avoid rendering the accident requirement in uninsured motorist policies nugatory, the occur-

rence must be viewed from the perspective of the tortfeasor. *Id.* at 905–906.

It follows from appellant's stipulation that Robert's conduct was intentional and Beverly's death was therefore nonaccidental. On this issue alone the trial court properly granted respondent's summary judgment motion.

## II. *Maintenance or Use of a Motor Vehicle*

■ Since we believe Beverly's death was not caused by accident, we need not reach the next issue. We note, however, three factors control the question of whether Beverly's injuries arose out of the use of a motor vehicle. First, there must be adequate causation between the Cadillac and Beverly's death. *Continental Western Insurance Co. v. Klug,* 415 N.W.2d 876, 878 (Minn.1987). That is the vehicle must be an "active accessory" to the injury sustained. *Tlougan v. Auto–Owners Insurance Co.,* 310 N.W.2d 116, 117 (Minn.1981). The causation standard is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Id.* The Cadillac was unquestionably an active accessory in causing Beverly's injuries and death as Robert used it as a weapon to strike and kill his wife.

We believe the second requirement is also met. No act of independent significance may occur which breaks the causal link between "use" of the vehicle and the injuries inflicted. *Klug,* 415 N.W.2d at 878. In *Edwards v. State Farm Mutual Automobile Insurance Co.,* 399 N.W.2d 95 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 13, 1987), this court found an intervening act where the tortfeasor drove the victim to the countryside, stopped the car and then raped and killed her. In another case, this court held an intervening act occurred when assailant, who had exchanged insults from his car, stopped his car, walked to plaintiff's car and punched him. *Wieneke v. Home Mutual Ins. Co.,* 397 N.W.2d 597, 600 (Minn.App.1986). By contrast, Robert never departed from the Cadillac in his plan to strike Beverly. Thus, no act of independent significance broke the link between Robert's use of the Cadillac and Beverly's injuries.

The third factor concerns a determination of what type of use of the Cadillac was involved. *Klug,* 415 N.W.2d at 878. The question of whether injury arose out of the use of a motor vehicle turns on the particular facts of each case. *Associated Independent Dealers,* 304 Minn. at 182, 229 N.W.2d at 518. Coverage should exist only for injuries resulting from use of the Cadillac for transportation purposes. *Classified Insurance Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985).

State Farm argues, and the trial court concluded, the Cadillac was not used for transportation purposes. We disagree. *Klug* provides guidance for our decision. In *Klug,* the tortfeasor chased and rammed the victim's car, ultimately wounding the victim by firing a shotgun from his moving car. The supreme court concluded the victim's injuries arose from the use of the car for motoring purposes. *Klug,* 415 N.W.2d at 878. The court reasoned the tortfeasor used his car to drive beside the victim and maneuver into a position to shoot. *Id.* at 878–79. Similarly, Robert used the Cadillac as a means to maneuver into a position to injure his wife.

The trial court's reliance on *Vodinelich* is misplaced. In *Vodinelich,* the supreme court denied automobile liability coverage to a woman's two children who were accidentally asphyxiated while she committed suicide by idling her car in the garage. The court held the car in this instance was not used for transportation purposes. *Vodinelich,* 368 N.W.2d at 923. However, in this case, unlike the woman in *Vodinelich,* Robert used his vehicle for transportation purposes when he intentionally struck his wife.

## III. *Uninsured Motor Vehicle*

The final issue is whether the Cadillac was an uninsured motor vehicle so as to entitle appellant to benefits. We need not reach this issue; however, we note that in this case the Cadillac was indeed uninsured.

■ Uninsured motor vehicle is defined as one "for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect." Minn.Stat. § 65B.43, subd. 16 (1988). State Farm asserts a plan of reparation security is in effect even though Robert's intentional killing of Beverly, in reality, precluded available liability insurance benefits.

This assertion is without merit. The supreme court concluded that as long as insurance is available to cover the vehicle at the time of accident, the vehicle is not uninsured. *Sorbo v. Mendiola*, 361 N.W.2d 851, 853 (Minn.1985). Conversely, if no insurance is available to cover the vehicle, as occurred in this case, the vehicle has no plan of reparation security in effect. Hence, the Cadillac was an uninsured vehicle.

The trial court concluded the Cadillac was not an uninsured vehicle under the insurance policy's definition. In State Farm's policy an uninsured motor vehicle includes one for which "the insurance company denies coverage." By itself this provision would include the Cadillac. However, the policy excludes from the definition a motor vehicle which is (1) insured under the liability coverage of *this* policy (emphasis added), or (2) furnished for the regular use of [the named insured] or any relative.

■ The first provision excludes the Cadillac as an uninsured motor vehicle, but does not preclude appellant from uninsured motorist coverage under two of the other State Farm policies held by Beverly. Minn. Stat. § 65B.49, subd. 3a(5) (1988) provides:

> If at the time of the accident the injured person is not occupying a motor vehicle, the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.

If the other requirements were satisfied, Beverly would be entitled to uninsured motorist benefits but for State Farm's exclusion. To extend the policy exclusion regarding the Cadillac to other policies held by Beverly on different vehicles would conflict with section 65B.49, subd. 3a(5) and

would, therefore, be impermissible. *See Roering v. Grinnell Mutual Reinsurance Co.*, 444 N.W.2d 829, 833 (Minn.1989). Beverly may rely on her other two policies.

■ Furthermore, we find unenforceable State Farm's provision which excludes coverage when the vehicle is furnished for use of another family member. A policy exclusion that denies recovery under one's own policy is unenforceable because first party coverage follows the person. *See Petrich by Lee v. Hartford Fire Insurance Co.*, 427 N.W.2d 244, 245 (Minn.1988). This is not a case where Beverly was negligent in insuring her vehicles. Moreover, Beverly did not purchase first party coverage and expect it to function as liability insurance. *See Myers v. State Farm Mutual Automobile Insurance Co.*, 336 N.W.2d 288, 192–92 (Minn.1983).

## DECISION

Appellant's claim for benefits under Beverly's uninsured motorist coverage with State Farm is denied. The trial court correctly interpreted the policy to preclude coverage when the tortfeasor's conduct is intentional.

Affirmed.

HUSPENI, Judge (concurring in part and dissenting in part).

In addressing the second and third issues in this case (whether Beverly Wilson's death arose out of the maintenance or use of an automobile and whether that automobile was uninsured), the majority notes preliminarily that these two issues need not be addressed because the majority had determined that no accident had occurred. The majority does, however, commendably go on to note that both of these issues should be resolved in favor of finding that uninsured motorist coverage was available. I concur with the majority in its analysis of each of these issues. I believe *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876 (Minn.1987), would permit no other answer but "yes" to the question: "Did this incident arise out of the maintenance or use of an automobile?" I also

believe that Robert Wilson's intentional act, which precluded availability of liability coverage to him, rendered the Cadillac uninsured, and made the uninsured motorist provisions of other policies under which Beverly Wilson was an insured available to her personal representatives.

I respectfully dissent, however, from the majority's determination that this incident must be viewed from the point of view of the tortfeasor, and therefore cannot be considered to be an accident. I submit, instead, that the question of whether this incident is an "accident" should be addressed from the point of view of the victim and should be answered "yes." [1]

In *Edwards v. State Farm Mutual Automobile Insurance Co.*, 399 N.W.2d 95 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 13, 1987), this court noted that

a majority of jurisdictions addressing the issue have found that the term "accident" should be viewed from the perspective of the victim. Under this rationale, the courts have universally held that intentionally inflicted injuries were "accidents" within the scope of uninsured motorist coverage. *See Country Companies v. Bourbon by Bourbon*, 122 Ill. App.3d 1061, 78 Ill.Dec. 407, 462 N.E.2d 526 (1984); *Redden v. Doe*, 357 So.2d 632 (La.Ct.App.1978); *Sciascia v. American Insurance Co.*, 183 N.J.Super. 352, 443 A.2d 1118 (N.J.Super.Ct.Law Div.1982),

*aff'd* 189 N.J.Super. 236, 459 A.2d 1198 (N.J.Super.Ct.App.Div.1983).

*Edwards* at 97.

I believe that a critical distinction must be made between third party (liability) and first party (uninsured motorist) coverage. The tortfeasor seeking to invoke his or her liability coverage to compensate a victim the tortfeasor *intentionally* injured must, indeed, be denied that coverage and is, in fact, consistently denied that coverage because of the intentional acts exclusion in the policy. However, the same considerations are not present in the situation of a victim who seeks his or her own first party (uninsured motorist) coverage from his or her own insurer. The intentional acts exclusion is inapplicable to a victim who is guilty of no intentional act.

The mischief to be avoided in cases involving a tortfeasor's intentional act while operating a motor vehicle is that which would result if the tortfeasor was able to insulate himself or herself from personal liability for those intentional acts. Permitting innocent victims to invoke their own first party coverage will in no way facilitate a tortfeasor's improper use of automobile insurance.

Finally, I remain convinced that the most formidable and appropriate obstacle to a victim's invocation of first party coverage should be that faced in convincing a court that the incident actually did arise out of the maintenance or use of a motor vehicle.

1. In *Continental Western Insurance Co. v. Klug,* 394 N.W.2d 872 (Minn.Ct.App.1987), *rev'd* 415 N.W.2d 876 (Minn.1987), this court found that the incident did not arise out of the use or maintenance of an automobile and did not reach the issue of whether the incident (an intentional shooting) was an accident. *Klug,* 394 N.W.2d at 877. On review, the supreme court ruled that the incident did arise out of the use or maintenance of an automobile and remanded the case to this court to determine whether there had been an accident. *Klug,* 415 N.W.2d at 879. The *Klug* case was settled before this court could make that determination. I submit that our supreme court's remand of the "accident" issue in *Klug* was a recognition of the viability of this issue. If there was literally no circumstance under which Minnesota courts would invoke uninsured motorist coverage for a victim of an intentional act, I believe the supreme court would have so indicated and avoid-

ed remand of that issue. I recognize, of course, the supreme court's recent denial of a petition for certiorari in *Petersen v. Croft,* 447 N.W.2d 903 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. Jan. 12, 1990). I also recognize, however, that the supreme court has stated

denial of a petition for further review [of an opinion of the court of appeals] means no more than that the supreme court has declined, at that time and for whatever undisclosed reasons, to consider the matter. [The supreme court's] discretionary review is not unlike the certiorari jurisdiction of the United States Supreme Court, where that court has often said that a denial of certiorari cannot be interpreted as ań adjudication or expression of opinion on the merits of the case.

*Murphy v. Milbank Mutual Insurance Co.,* 388 N.W.2d 732, 739 (Minn.1986) (citations omitted). *See also State v. Shamp,* 427 N.W.2d 228, 230–31 n. 3 (Minn.1988).

*St. Paul Fire and Marine Insurance Co. v. Sparrow,* 378 N.W.2d 12, 16 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Jan. 23, 1986); *Timmers v. State Farm Mutual Automobile Insurance Co.,* 374 N.W.2d 338, 339–40 (Minn.Ct.App.1985); *Classified Insurance Corp. v. Vodinelich,* 368 N.W.2d 921, 922–23 (Minn.1985); *Tlougan v. Auto–Owners Insurance Co.,* 310 N.W.2d 116, 117 (Minn.1981). Once a court has been persuaded that the formidable "maintenance/use" prong has been met, that court should have little difficulty in recognizing that permitting victims of intentional tortfeasors to receive first party benefits is both legally sound and consistent with the policy that insurance should be available to compensate persons who are injured as a result of the hazards associated with motoring.