STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation, Petitioner–Appellant,

v.

Stephanie R. McMILLAN and Tracy D.
McMillan, Respondents–Appellees.

No. 93CA1721.

Colorado Court of Appeals,
Div. I.

Sept. 8, 1994.

As Modified on Denial of Rehearing
Nov. 10, 1994.

Certiorari Granted July 31, 1995.

**1244**

Rodman & Ross–Shannon, John R. Rodman, David L. Murphy, Denver, for petitioner-appellant.

Martin E. Long & Associates, P.C., Martin E. Long, Denver, for respondents-appellees.

Opinion by Judge ROY.

This is a declaratory judgment action to determine the availability of uninsured motorist benefits. Petitioner, State Farm Mutual Automobile Insurance Company, appeals from the trial court's order vacating a summary judgment entered in its favor pursuant to C.R.C.P. 60(b) and the subsequent summary judgment entered in favor of respondents, Stephanie and Tracy D. McMillan. We affirm.

On September 30, 1989, Stephanie McMillan (McMillan) was struck by a bullet while she was driving her car. The bullet was fired by an occupant of another vehicle who had been "tailgating" the McMillans and with whom the McMillans had engaged in verbal exchanges.

The insurer for the assailant's vehicle denied liability coverage. The McMillans' vehicle was insured by State Farm, and McMillan made a claim for benefits for her injuries. State Farm denied both Personal Injury Protection (PIP) benefits and benefits under the uninsured motorist coverage and then filed

this declaratory judgment action to determine its liability for McMillan's injuries. The parties subsequently stipulated to the dismissal of any claims relating to PIP coverage and then State Farm filed a motion for summary judgment.

The trial court, on March 28, 1991, reserved ruling on State Farm's motion stating:

It has come to the Court's attention that a case with very similar issues was argued before the Court of Appeals on 2–25–91. Therefore, the Court will wait to rule on this issue to see if the appellate court provides any guidance on how to handle this matter.

The case to which the trial court referred, *State Farm Automobile Insurance Co. v. Cung La*, 819 P.2d 537 (Colo.App.1991) (*Cung La I*), was announced March 28, 1991. In *Cung La I*, a panel of this court held that the victim of a shooting under very similar facts was not entitled to uninsured motorist benefits from his insurance carrier, State Farm.

Subsequently, on May 15, 1991, the trial court, expressly relying on *Cung La I*, granted summary judgment in favor of State Farm, stating:

As anticipated, the case of *State Farm v. Cung La*, 90CA0105, announced March 28, 1991, by the Colorado Court of Appeals, is dispositive. Under *Cung La* Defendant's injuries did not 'arise out of the use or operation of a motor vehicle.'

On December 2, 1991, the McMillans submitted to the trial court a "Notice to Court" advising that certiorari had been granted by our supreme court in *Cung La I*. Subsequently, on May 26, 1992, the court announced its decision reversing this court. *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007 (Colo.1992) (*Cung La II*).

On June 29, 1992, relying on *Cung La II*, the McMillans filed a motion pursuant to C.R.C.P. 60(b)(4) and (5) seeking relief from the summary judgment previously entered.

In granting this motion for relief, the trial court stated:

> This Court, relying on *State Farm v. Cung La,* 90 CA 0105, announced March 28, 1991, by the Colorado Court of Appeals, granted Plaintiff's Motion for Summary Judgment. The Court of Appeals decision was reversed by the Colorado Supreme Court on May 26, 1992. At all times, Respondent had kept this Court informed and advised as to the status of *Cung La,* which this Court determined was dispositive of the Motion for Summary Judgment.

After the trial court's ruling reopening the case, and based on its reading of *Cung La II,* State Farm moved to amend its petition for declaratory relief alleging that the injuries incurred by McMillan were not "caused by accident" that arose out of the operation or use of a motor vehicle. The trial court granted the motion to amend.

Both parties then filed cross-motions for summary judgment. In ruling upon these motions, the trial court concluded that McMillan's injuries were "caused by accident" within the meaning of the policy and she was, therefore, entitled to uninsured motorist benefits from her insurer, State Farm.

## I.

■ State Farm first contends that the trial court erred in vacating the initial summary judgment order pursuant to C.R.C.P. 60(b)(4) and C.R.C.P. 60(b)(5). We conclude that, under these unique circumstances, the trial court did not abuse its discretion in setting aside the initial summary judgment pursuant to C.R.C.P. 60(b)(5). We do not, therefore, address the applicability of C.R.C.P. 60(b)(4).

■ The standard of review with regard to post-judgment relief is whether the trial court abused its discretion in granting or denying the C.R.C.P. 60(b) motion. *See Johnson v. Johnson,* 132 Colo. 236, 287 P.2d 49 (1955); *In re Marriage of Seely,* 689 P.2d 1154 (Colo.App.1984).

C.R.C.P. 60(b) specifies a number of circumstances in which a trial court may relieve a party from the effects of a final judgment, order, or proceeding. It, and the corresponding federal rule, have been described as attempting "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Canton Oil Corp. v. District Court,* 731 P.2d 687, 694 (Colo.1987), *quoting,* 11 C.Wright & A. Miller, *Federal Practice & Procedure* § 2851 at 140 (1973).

C.R.C.P. 60(b)(5) permits a trial court to set aside a final order for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6) permits a federal court to grant relief from a final judgment or order on the same "other reason" grounds as C.R.C.P. 60(b)(5).

C.R.C.P. 60(b)(5) has been interpreted by our supreme court to apply to "extreme situations not covered by the preceding clauses in the rule," *Atlas Construction Co. v. District Court,* 197 Colo. 66, 69, 589 P.2d 953, 956 (1979), and its federal counterpart has been referred to as the "grand reservoir of equitable power to do justice in a particular case." *Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538, 542 (2d Cir.1963).

■ Accordingly, the rule must be applied in light of its equitable purposes. It should not be interpreted so broadly that it creates uncertainty surrounding the validity of judgments or so narrowly that it will not accomplish justice in the situation in which it is warranted. *See Canton Oil Corp. v. District Court, supra.*

In interpreting the federal rule, the United States Court of Appeals for the Tenth Circuit has held that when a state supreme court overrules a decision upon which the relief was based, relief under Fed.R.Civ.P. 60(b)(6) is justified. *Pierce v. Cook & Co.,* 518 F.2d 720 (10th Cir.1975); *see also Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 702 (10th Cir.1989) ("[A] change in relevant case law by the United States Supreme Court warrants relief under Fed.R.Civ.P.

60(b)(6).”); *Koch v. Billings School District No. 2*, 253 Mont. 261, 833 P.2d 181 (1992) (change in “immunity law” created circumstances permitting relief under state's “other reason clause”).

In our view, an analogous principle applies here in light of the change in case law effected by our supreme court's ruling in *Cung La II*. Indeed, the situation here is as compelling as that presented in *Pierce* in that our supreme court in *Cung La II* also reversed the very case upon which the trial court relied in entering the initial summary judgment.

State Farm urges us to follow *E.B. Jones Construction v. Denver*, 717 P.2d 1009 (Colo. App.1986). We find *Jones* distinguishable and decline. In *Jones*, Denver moved to have a judgment set aside under C.R.C.P. 60(b)(5) based on a recently issued supreme court opinion which was characterized as reiterating a long established rule of law in Colorado. Here, *Cung La I* and *Cung La II*, though they obviously reached different conclusions, both announced a new rule of law in a case of first impression in Colorado.

■ For the reasons set forth above, we also reject State Farm's contention that the McMillans are not entitled to relief from the initial summary judgment order because they failed to pursue a timely appeal of that determination. C.R.C.P. 60(b)(5) is not “a substitute for an appeal, but instead is meant to provide relief in the interests of justice in extraordinary circumstances.” *Cavanaugh v. State*, 644 P.2d 1, 5 (Colo.1982), *appeal dismissed*, 459 U.S. 1011, 103 S.Ct. 367, 74 L.Ed.2d 504 (1982).

Under the unique circumstances of this case, the McMillans, in our view, have not deliberately chosen not to appeal as contended by State Farm. *See Canton Oil v. District Court, supra.* Rather, the conduct of the parties and the trial court's reliance on a single precedent that was subsequently reversed creates the equitable circumstances that justify relief under C.R.C.P. 60(b)(5).

We conclude that the trial court, and for that matter the parties, intended to rely on a correct statement of the applicable law. Timing alone dictated an incorrect result. Thus, it was appropriate that the trial court review its initial summary judgment order and take appropriate action.

Therefore, we conclude that the trial court did not abuse its discretion in granting the C.R.C.P. 60(b) motion. *See Johnson v. Johnson, supra; In re Marriage of Seely, supra.*

## II.

■ State Farm next contends that the trial court erred in determining that McMillan's injuries were “caused by accident.” Again, we disagree.

### A.

The McMillans' policy with State Farm provides uninsured motorist coverage as follows:

> We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*. (emphasis original)

State Farm argues that because the injuries suffered by McMillan were caused by an intentional, criminal act, they were not “caused by accident” within the meaning of the policy. No Colorado case has directly addressed this issue.

The statute governing uninsured motorist coverage, § 10–4–609, C.R.S. (1994 Repl.Vol. 4A), requires insurers to provide protection against damages caused by uninsured motorists, unless waived, and states:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein ... for

the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ... except that the named insured may reject such coverage in writing.

Section 10–4–609(1), C.R.S. (1994 Repl.Vol. 4A).

■ Uninsured motorist coverage enables an insured to obtain compensation for loss caused by a negligent and financially irresponsible motorist in the same manner as the insured would be compensated for loss caused by the negligent conduct of an insured motorist. *See State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165 (Colo.1993); *Cung La II, supra; Kral v. American Hardware Mutual Insurance Co.,* 784 P.2d 759 (Colo.1989); *Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979); *McMichael v. Aetna Insurance Co.,* 878 P.2d 61 (Colo.App. 1994) *(cert. granted* 1994).

Our supreme court, in *Cung La II,* answered in the affirmative the question of whether an insured who had been injured because of the intentional acts of another can recover uninsured motorist benefits. *Cung La II* involved the shooting of an insured while driving a motor vehicle by a passenger of an uninsured vehicle. The primary difference between *Cung La II* and this case is that in *Cung La II* the shooting resulted from an unrelated altercation occurring a week earlier and here the shooting resulted from a contemporaneous confrontation. Without addressing the phrase "caused by accident" in the policy, and relying on the statute, the court held that the injuries arose out of the use of the assailant's uninsured vehicle and that the facts created a material issue of fact regarding whether the injured driver was covered under his uninsured motorist policy.

State Farm argues that the supreme court reserved, and did not address, the phrase "caused by accident" contained in both the PIP and uninsured motorist sections of the policy and that a contrary result is dictated by that language. We disagree.

At the outset, we note that the reservation in *Cung La II* related to the court's discussion of PIP coverages and not uninsured motorist coverages. In addition, the issue in *Cung La II* was limited to the meaning of the phrase "arising out of the operation, maintenance or use of an uninsured motor vehicle" which was contained in both the policy and the statute. State Farm does not now raise the issue of whether McMillan's injuries "[arose] out of the operation, maintenance or use of an uninsured motor vehicle."

■ The language of the uninsured motorist statute makes no reference to the term "accident" or "accidental causes," nor does it make the distinction between negligent and intentional acts in order for there to be coverage. The statute requires only that coverage be provided for bodily injury arising out of the use of a motor vehicle "for the protection of persons insured thereunder who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles...." Section 10–4–609(1) (emphasis added).

This interpretation is also in accord with several other courts that have analyzed similar uninsured motorist statutes. *See State Automobile Mutual Insurance Co. v. Skeens,* 661 F.Supp. 1109 (S.D.W.Va.1987) (applying West Virginia law); *Keeler v. Farmers & Merchants Insurance Co.,* 724 S.W.2d 307 (Mo.App.1987); *Dyer v. American Family Insurance Co.,* 159 Ill.App.3d 766, 111 Ill. Dec. 530, 512 N.E.2d 1071 (1987); *see also* 1 A. Widiss, *Uninsured & Underinsured Motorist Insurance* § 10.7 (2d ed. 1992).

B.

Even if the "caused by accident" language contained in the policy is not in violation of the statutory requirement for coverage, we conclude that the result is the same.

■ As to this issue, the majority position, which we now adopt, is that when an insured is the innocent victim of an intentional tort committed by an uninsured motorist, the in-

sured is entitled to coverage. *See* 2 I. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, Compulsory Coverage* § 29.03[9] (2d ed. 1994 rev.).

The rationale of the majority is that the "accident" should be viewed from the standpoint of the insured. *See Alabama Farm Bureau Mutual Casualty Insurance Co. v. Mitchell,* 373 So.2d 1129 (Ala.Civ.App.1979); *Leatherby Insurance Co. v. Willoughby,* 315 So.2d 553 (Fla.Dist.Ct.App.1975); *Ganiron v. Hawaii Insurance Guaranty Ass'n,* 69 Haw. 432, 744 P.2d 1210 (1987); *Country Cas. v. Bourbon,* 122 Ill.App.3d 1061, 78 Ill.Dec. 407, 462 N.E.2d 526 (1984); *Milwaukee Mutual Insurance Co. v. Butler,* 615 F.Supp. 491 (S.D.Ind.1985) (construing Indiana law); *Redden v. Doe,* 357 So.2d 632 (La.App.1978); *Davis v. State Farm Mutual Automobile Insurance Co.,* 264 Or. 547, 507 P.2d 9 (1973) (construing Michigan law); *Keeler v. Farmers & Merchants Insurance Co., supra; Sciascia v. American Insurance Co.,* 183 N.J.Super. 352, 443 A.2d 1118, *aff'd,* 189 N.J.Super. 236, 459 A.2d 1198 (App.Div. 1983); *Kish v. Central National Insurance Group,* 67 Ohio St.2d 41, 424 N.E.2d 288 (1981); *General Accident Insurance Co. v. Olivier,* 574 A.2d 1240 (R.I.1990).

The contrary, and minority view, is that the matter should be considered from the perspective of the tortfeasor. *See Wilson v. State Farm Mutual Automobile Insurance Co.,* 451 N.W.2d 216 (Minn.App.1990); *McCarthy v. Motor Vehicle Accident Indemnification Corp.,* 16 A.D.2d 35, 224 N.Y.S.2d 909 (N.Y.App.Div.1962), *aff'd,* 12 N.Y.2d 922, 238 N.Y.S.2d 101, 188 N.E.2d 405 (1963); *Roller v. Stonewall Insurance Co.,* 115 Wash.2d 679, 801 P.2d 207 (1990); *see also* 2 I. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, Compulsory Coverage* § 24.03 (2d ed. 1994 rev.).

As one court taking the majority view has stated: "[W]e think the better rule to be that which considers the injury from the standpoint of the victim, rather than that which centers upon a characterization of the actions of the uninsured or unknown motorist...." *Country Cos. v. Bourbon, supra,* 78 Ill.Dec. at 411, 462 N.E.2d at 530. Another court commented:

The practical purpose of uninsured motorist coverage is to afford protection to an insured when he becomes the innocent victim of an uninsured motorist, and who would otherwise be left without recourse to secure reparation.... As such, this coverage acts as an accident policy for the victim; and is statutorily mandated.... In this instance, the social policy of preventing an insured from profiting from his own wrongs (attendant to liability insurance) is not applicable. Rather, social policy considerations in uninsured motorist situations militate in favor of compensating the innocent and unsuspecting victim.

We believe that the nature and purpose of uninsured motorist coverage require that the question of whether or not an injury is accidental must be determined from the victim's standpoint. From this point of view, although inflicted intentionally, the victim's injuries result nonetheless from an 'accident' within the meaning of the policy.

*Redden v. Doe, supra,* at 633–34.

One treatise states four reasons why it is appropriate to examine the question of whether the injuries were "caused by accident" from the viewpoint of the injured party. They are:

[ (1) That] ... unless the tortious conduct of the uninsured or unidentified motorist was provoked by the injured person, the events and the injuries resulting from intentional acts are indistinguishable from those that result from negligent acts. In other words, when injuries are viewed from the vantage point of an injured person, the cause of the injuries is no less fortuitous than the situation in which a person is injured as a result of the negligent operation of an uninsured vehicle.

[ (2) That] since uninsured motorist insurance is a first party coverage, the insur-

ance provides no benefits—directly or indirectly—to the tortfeasor. Indeed, if the tortfeasor is financially responsible, the insurer which has paid uninsured motorist insurance benefits may seek reimbursement for payments made to a claimant. Therefore, the claim for indemnification under uninsured motorist insurance is readily distinguished from situations involving a question about whether liability insurance covers claims for damages that result from intentional torts.

[ (3) That] the justifications for not indemnifying the insured who intentionally commits a tortious act relate to deterrence or punishment: considerations that do not apply to the payment of first party, uninsured motorist insurance claims. Uninsured motorist insurance benefits paid to an injured person do not reduce the possibility that the tort system or the criminal law system will operate either (a) to punish the tortfeasor or (b) to influence the conduct of the tortfeasor who caused the loss which is indemnified by the insurance or of other potential tortfeasors.

[ (4) That] the enactment of uninsured motorist insurance statutes throughout the country, which mandate either that the insurance be offered to all motor vehicle insurance purchasers or included in all motor vehicle insurance policies, reflects the importance attached to providing indemnification for innocent traffic victims who are injured by financially irresponsible or unidentified motorists.

1 A. Widiss, *Uninsured & Underinsured Motorist Insurance* § 10.2 (2d ed. 1992).

In summary, we conclude that our supreme court, in *Cung La II,* has held that the phrase "caused by accident" contained in the insurance policy does not define or limit the benefits that an insured is entitled to recover pursuant to the uninsured motorist statute. We also conclude that the phrase "caused by accident," in this context, includes coverage for injuries sustained under the circumstances of this case.

Therefore, the trial court did not err in ruling that the injuries suffered by McMillan

were covered by the uninsured motorist provisions of her policy.

The judgment is affirmed.

METZGER and RULAND, JJ., concur.