IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79416-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAGMEET SINGH DHALIWAL, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Jagmeet S. Dhaliwal and his brother, Sukhdev Dhaliwal,[1] were both charged with assault in the second degree and assault in the fourth degree. Following a joint bench trial, Jagmeet was convicted on both counts. He argues that there was insufficient evidence to support his conviction for assault in the second degree and that the court erred in denying a defense motion to dismiss due to government misconduct under CrR 8.3(b). Jagmeet fails to demonstrate prejudice from the mismanagement such that reversal is required and we find that sufficient evidence supports the conviction. Accordingly, we affirm.

## FACTS

Brothers Jagmeet and Sukhdev Dhaliwal, were both charged with assaulting two men after they learned of a rumor circulating about their sister. They

---

[1] Because the brothers share the same last name, we refer to them by their first names for clarity. No disrespect is intended.

were charged identically: assault in the second degree by strangulation, or alternatively by reckless infliction of bodily harm, of Kanwar Sidhu[2] and assault in the fourth degree alleged to have been committed against Manjot Mann.  The brothers were jointly tried as codefendants and waived their right to a jury.  The bench trial resulted in convictions of assault in the fourth degree for both brothers and Jagmeet alone was convicted of the assault in the second degree charge, a most serious or "strike" offense, under the substantial bodily harm prong.

The charges arose from an incident that occurred one evening in the fall of 2017, when Sukhdev was employed as an officer with the Bellingham Police Department.  Jagmeet and Sukhdev became aware that Sidhu was alleged to have made derogatory statements about their younger sister.  The brothers discussed their concern about the rumors and decided to reach out to Jagmeet's friend, D.J. Heer, to setup a meeting for them with Sidhu.  Heer reached out to a friend of Sidhu's, Mann, to arrange a meeting at Heer's trucking business where Sidhu was employed.

When the Dhaliwal brothers arrived and approached the business office, Heer sent Mann out to meet them.  There was a brief altercation between the brothers and Mann, which was partially captured on security footage.  Mann testified at trial that when he exited the business to meet the brothers, Jagmeet grabbed him by the collar and Sukhdev round house punched him in the temple. The brothers thought Mann was Sidhu as Jagmeet had forgotten his glasses and could not see clearly, and Sukhdev was meeting Sidhu for the first time and would

---

[2] The civilian witnesses at trial referred to Sidhu as Kenny.

not have recognized him. Upon the realization that Mann was not Sidhu, the brothers disengaged and all three men entered the business together.

At this point, trial testimony diverged as to who instigated the conflict that ensued. All witnesses agreed that there was a fight, which resulted in Sidhu's assault. Sidhu and Mann testified Sukhdev punched Sidhu while Jagmeet held his legs and possibly kicked him. Mann testified that neither brother stopped the assault against Sidhu until Mann and Heer intervened to pull the brothers off of him. Sidhu testified he thought the brothers stopped on their own. Mann's testimony was inconsistent at trial as to whether Sukhdev or Jagmeet initiated the assault. Sukhdev and Heer both testified that Jagmeet was the only one assaulting Sidhu, which was stopped by Heer and Sukhdev pulling Jagmeet out of the fight. Jagmeet provided statements consistent with Sukhdev's version of events to Bellingham Police Deputy Chief Scott Grunhurd[3] as part of an internal affairs investigation regarding Sukhdev's involvement in the assault.

After the fight broke up, the Dhaliwal brothers left momentarily. However, they soon returned with a mutual acquaintance, Sunny Gill, on speakerphone to confirm that it was Sidhu who had been spreading rumors about the Dhaliwals' sister. The brothers then left, warning Sidhu to stop with the rumors.

Sidhu left the business and drove to his friend, Raj Sangha's, house. Hours later, when Mann got off work at Heer's trucking business, Mann and Sidhu called 911 and then went to the hospital. Sidhu's face was injured with swelling and bruising around the right eye, which he testified resulted in total loss of vision for

---

[3] Grunhurd held the rank of Lieutenant at the time of the investigation and Jagmeet's interview, but was subsequently promoted to Deputy Chief.

five days. Photographs taken at the time also show some bruising to Sidhu's neck, which were the basis for the strangulation allegation underlying the assault in the second degree charge.

After ten days, testimony from 26 witnesses that was at times inconsistent and contradictory, and a midtrial investigation of possible collusion between Sidhu and Sangha, the trial concluded on September 20, 2018. The judge found Jagmeet guilty of assault in the second degree under the substantial bodily harm prong and assault in the fourth degree. Sukhdev was acquitted of the strike offense, but convicted of assault in the fourth degree based on the altercation with Mann before the brothers entered the business office. Jagmeet was sentenced on December 10, 2018 and timely filed a notice of appeal.

The following procedural facts are not contained in the record on appeal, but are undisputed by the parties. The State failed to procure findings of fact and conclusions of law after the bench trial. The judge who heard the bench trial retired on February 28, 2019. After Jagmeet's opening brief was filed in this court, the State realized the lapse and set a hearing in the trial court to enter findings of fact and conclusions of law. Jagmeet moved for a stay of entry, which was denied by a commissioner of this court. The trial court hearing was conducted on October 30, 2019 with attorneys present for the State and both defendants. The retired judge appeared pro tem and imposed the costs of his appearance on the State as a result of its oversight in timely obtaining the findings and conclusions after trial.

ANALYSIS

I.    Findings of Fact and Conclusions of Law After Bench Trial

Jagmeet first challenges the delayed entry of findings of fact and conclusions of law long after the bench trial had concluded and seeks reversal on that basis. CrR 6.1(d) explicitly requires "[i]n a case tried without a jury, the court shall enter findings of fact and conclusions of law." The purpose of this rule is to facilitate appellate review. State v. Head, 136 Wn.2d 619, 622 N.1, 964 P.2d 1187 (1998). Oral rulings by the trial court do not cure the absence of formal written findings of fact and conclusions of law. Id. at 622. While strongly disfavored, submission of findings of fact and conclusions of law may occur if a party is not prejudiced by the late entry. See State v. McGary, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984). "The practice of entering findings after the appellant has framed the issues in the opening brief has the appearance of unfairness and burdens the court with motions to supplement the record." Id.

Jagmeet alleges a disparity by reviewing courts as to the strict application of various Criminal Rules and Rules of Appellate Procedure, but offers no authority for his proposition that we should disregard case law that allows for late entry of findings and conclusions in the absence of a showing of prejudice. "For example, a defendant might be able to show prejudice resulting from the lack of written findings and conclusions where there is strong indication that findings ultimately entered have been 'tailored' to meet issues raised on appeal." Head, 136 Wn.2d at 624-25. A panel of this court recently found prejudice and reversed a manifest injustice disposition in a juvenile conviction in State v. I.N.A. based on the

prosecutor's failure to timely procure findings of fact and conclusions of law. 9 Wn. App.2d 422, 446 P.3d 175 (2019). The prejudice in I.N.A. was compounded by the fact that when ordered by this court to obtain the necessary findings for the appeal, the prosecutor did so by means of an ex parte hearing without notice to defense. Id.

In briefing, the State acknowledges that the burden to timely enter findings of fact and conclusions of law after a bench trial rests with the trial court and the prevailing party under CrR 6.1(d), but then boldly argues that Jagmeet "could and should have made efforts to resolve this issue with either trial or appellate counsel prior to filing his opening brief and chose not to do so." This argument is not only inconsistent with the law, it demonstrates a fundamental misunderstanding of the role of the defense in criminal proceedings. To suggest that counsel for a defendant somehow had an obligation to assist the State in securing a conviction of their client is offensive to the very notions of justice underpinning our fundamentally adversarial legal system. The State's flawed argument contradicts the duties of defense counsel under the Rules of Professional Conduct and, if counsel is appointed, the Standards for Indigent Defense. The defense had no duty to advise the State of such a lapse nor take steps to correct it.

While the delay here clearly highlights the policy reasons underlying CrR 6.1(d), the facts before us do not support a conclusion that the findings were tailored as described in Head, nor are they as egregious as those in I.N.A. where the validity of the juvenile's sentence was directly implicated and findings were entered ex parte. Head, 136 Wn.2d at 624-25; I.N.A., 9 Wn. App.2d 422. Here,

the State properly gave notice to defense counsel for both brothers and the court heard argument from the parties. Further, our comparison of the oral findings at the conclusion of trial and the written findings entered ten months after sentencing does not suggest that they were tailored to the issues raised in Jagmeet's opening brief. Jagmeet fails to demonstrate prejudice as a result of the late entry of findings and conclusions sufficient to warrant reversal and remand for a new trial.[4]

## II. Sufficiency of the Evidence

Jagmeet next asserts that the evidence was insufficient to support his conviction as to assault in the second degree.[5] "In assessing the sufficiency of the evidence, the court must view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. "We defer to the trier of fact's resolution of conflicting testimony, evaluation of

---

[4] However, it is worth noting that had the trial judge passed away or otherwise been unable to return to sit as pro tem, as opposed to retiring and remaining available to continue to serve the local legal community, we would be vacating the conviction on this strike offense.

[5] While the State also briefed sufficiency as to the conviction for assault in the fourth degree against Mann, Jagmeet conceded that conviction in his opening brief and we need not reach that issue.

witness credibility, and decisions regarding the persuasiveness of evidence." State v. Curtiss, 161 Wn. App. 673, 693, 250 P.3d 496 (2011).

Jagmeet's challenge to the sufficiency of evidence focuses on the conflicting testimony at trial. There was a dispute as to which of the Dhaliwal brothers engaged in the felony assault of Sidhu. The judge, presiding over a bench trial, was left to resolve those conflicts and make credibility determinations as to the various witnesses. Sidhu and Mann testified it was Sukhdev who attacked Sidhu and caused the injury to his eye which constituted the substantial bodily harm underlying the assault in the second degree charge. However, Sukhdev and Heer claimed it was Jagmeet who engaged in the assault of Sidhu, and Jagmeet's own statements in the Bellingham Police internal affairs interview corroborated their testimony. This is exactly the sort of conflicting testimony the trier of fact is tasked with resolving.

Whether the finder of fact is a jury or a judge presiding over a bench trial, they are best suited to make such credibility determinations based on a variety of factors that include observations of tone and body language of the witnesses, which is why reviewing courts grant deference to those findings. State v. Boyer, 200 Wn. App. 7, 13, 401 P.3d 396 (2017). We decline Jagmeet's invitation to review the motives of the various parties, reweigh the evidence, and make credibility determinations of our own. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to find that Jagmeet intentionally assaulted Sidhu and, in doing so, recklessly inflicted substantial bodily harm. While Sidhu testified that it was Sukhdev who caused the injury underlying

the assault in the second degree charge, Jagmeet admitted to committing that assault during the internal affairs investigation of his brother. The trial judge was entitled to find Jagmeet's statement more credible than Sidhu's on this fact and we will not disturb such a finding. Sidhu testified that the assault was such that he lost use of his eye for five days which supports a conclusion that the injury rose to the level of substantial bodily harm. The court, however, did not find sufficient evidence to support the strangulation prong of assault in the second degree. These determinations by the judge properly follow the evidence adduced at trial.

Though Jagmeet assigns error to numerous findings of fact by the trial court in his supplemental brief, he provides no argument or authority as to why each of these challenged findings was improper. "Assignment of error without argument or citation of authority will not be considered on appeal." U.S. Fire Ins. Co. v. Roberts and Schaefer Co., 37 Wn. App. 683, 688, 683 P.2d 600 (1984). Collectively, this panel understands these additional assignments of error as supporting Jagmeet's sufficiency challenge set out in his opening brief, but the evidence here was sufficient to support the conviction for assault in the second degree.

III.    Government Misconduct

Jagmeet finally argues that the trial court abused its discretion in denying the joint defense motion for dismissal based on government misconduct under CrR 8.3(b) after learning that two witnesses, Sangha and Sidhu, had communicated during trial and specifically discussed testifying. Both the trial prosecutor and an assistant became aware of this communication between the witnesses and failed

to timely notify defense or the court. CrR 8.3(b) provides "[t]he court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

We review the denial of a CrR 8.3(b) motion for abuse of discretion. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). It is the defendant's burden to show arbitrary action or governmental misconduct and that the improper conduct prejudiced the defendant's right to a fair trial. State v. Michielli, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997). "Such prejudice includes the . . . 'right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.'" Id. at 240 (quoting State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)). "Governmental misconduct . . . 'need not be of an evil or dishonest nature; simple mismanagement is sufficient.'" Michielli, 132 Wn.2d at 239 (emphasis omitted) (quoting State v. Blackwell, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)). "Yet Washington courts have clearly maintained that dismissal is an extraordinary remedy to which the court should resort only in 'truly egregious cases of mismanagement or misconduct.'" State v. Wilson, 149 Wn.2d 1, 9, 65 P.3d 657 (2003) (quoting State v. Duggins, 68 Wn. App. 396, 401, 844 P.2d 441 (1993)).

Jagmeet renews his argument from the trial court; that it was government misconduct for the State to fail to notify the defense when an assistant to the deputy prosecutor[6] became aware that two witnesses had spoken about the trial

---

[6] This employee of the prosecutor's office is alternately referred to in the record and briefing as an assistant, domestic violence advocate, victim advocate, and victim witness coordinator. While

to some degree, after one had already testified and prior to the other testifying. Another witness, Arandeep Singh, heard the victim witness coordinator on the phone with Sangha, who reached out to her to reschedule his testimony. Singh asked the victim witness coordinator if that was Sangha on the phone and she confirmed that it was. Singh further asserted that the victim witness coordinator then stated that Sangha was nervous because he had heard from Sidhu that he had been "grilled" while testifying. Singh mentioned this conversation to the defense attorneys out of apparent amusement.

Defense counsel were able to cross examine Sangha about this communication with Sidhu, based on the information Singh had disclosed to them. Sangha was evasive in his response to their questioning and denied his conversation with Sidhu after reviewing the call log on his cell phone while on the witness stand, but ultimately conceded that Sidhu probably called him. The next morning, the court heard the defense motion to dismiss under CrR 8.3(b). In the course of the motion hearing, the State admitted that Sangha made a comment to the prosecutor prior to his testimony the day before along the lines that "Mr. Sidhu said he really got grilled." The court denied the motion after extensive argument, noting that if the witnesses had colluded, their testimony was such that the collusion was very poorly executed.

The judge's observation is supported by the record as there were many inconsistencies throughout both Sidhu and Sangha's testimony, which resulted in

---

her proper title is not clear, the parties appear to agree that she was employed by the prosecutor's office and tasked with coordinating witnesses on behalf of the State in this case. The State's briefing utilizes victim witness coordinator and we adopt that description for this opinion.

the trial court finding neither witness credible. The court also indicated that it would provide the defense as much time as necessary to explore the issue and allow Sidhu to be recalled for examination on the matter. Despite the denial, the court noted that defense could renew the motion as more information developed. Defense counsel were able to interview the victim witness coordinator and review follow up reports from a detective after supplemental interviews of Sidhu and Sangha about their communication, and did eventually get to examine Sidhu about the communication as well. The men ultimately admitted to communicating via Snapchat.[7] The defense did not renew the CrR 8.3(b) motion.

We disagree with the State's assertions before the trial court that the victim witness coordinator or prosecutor were somehow relieved of the duty to disclose simply because they were unaware of the details of the communication between the witnesses. The victim witness coordinator, an employee of the prosecutor's office, was told by a witness who had yet to testify that he had spoken with the named victim, who had already testified, and had learned enough about the victim's experience at trial that he was concerned and may have sought to reschedule his own testimony. Strong arguments are made as to government mismanagement based on the failure of the victim witness coordinator to immediately alert the deputy prosecutor to the fact that witnesses were discussing testimony during trial and the subsequent failure of the State to timely disclose such potential impeachment information to the defense or alert the court when

---

[7] A cell phone messaging application whose principle feature is that videos, photographs and messages sent through the app are available for a short time before they become inaccessible to their sender and recipient.

Sangha denied the communication under oath after having just disclosed it to the prosecutor immediately prior to his testimony. However, the court offered thoughtful and responsive remedies of extra time, recalling witnesses and renewal of the motion based on additional information. As such, Jagmeet fails to demonstrate prejudice based on the government mismanagement sufficient to the warrant the extraordinary remedy of reversal.

As noted by the trial court, any potential collusion by Sidhu and Sangha was ineffective based on their inconsistent testimony. The main argument in support of the motion to dismiss was that defense were prejudiced by not being able to impeach the witnesses with more detailed information about their communication. However, based on Singh's disclosure, defense did actually impeach Sangha with the fact of his communication with Sidhu. While it may not have been as extensive or dramatic as could have been achieved with additional information, this was a bench trial and the judge found the impeachment sufficiently effective to discredit portions of Sidhu's and Sangha's testimony. As a result, their testimony was not given as much weight as other witnesses in the court's consideration of the evidence as a whole. The court did not err in denying the CrR 8.3(b) motion to dismiss based on Jagmeet's failure to demonstrate sufficient prejudice.

Affirmed.

WE CONCUR:

_____

Mann, C.J.                    Dwyer, J.

- 13